IN THE COURT OF APPEALS OF TENNESSEE
AT NASHVILLE
June 14, 2000 Session

## ROBERT LELAND BRYANT, ET AL. v. JAMES ASHLEY BRYANT

**A Direct Appeal from the Circuit Court for Davidson County**
**No. 97A-84    The Honorable Muriel J. Robinson, Judge**

_____

**No. M1999-01280-COA-R3-CV - Filed October 10, 2000**

_____

Petitioners filed a petition to terminate the parental rights of the biological father and for adoption of two minor children based on abandonment by the father. On the first appeal, this Court reversed the trial court's order denying termination of parental rights and remanded the case for the trial court to determine whether the termination of parental rights is in the best interest of the children. The trial court found that termination of parental rights is in the best interest of the children and granted the adoption. Father has appealed.

**Tenn.R.App.P. 3; Appeal as of Right; Judgment of the Circuit Court Affirmed and Remanded**

W. FRANK CRAWFORD, P.J., W.S., delivered the opinion of the court, in which ALAN E. HIGHERS AND HOLLY KIRBY LILLARD, J., joined.

Robert L. Jackson, Larry Hayes, Jr., Nashville, For Appellant, James Ashley Bryant

Wende J. Rutherford, Paul A. Rutherford, Nashville, For Appellees, Robert Leland Bryant, Linda Kay Wolfson Bryant

**OPINION**

This case is before the Court for the second time. Petitioners, Robert Leland Bryant and wife, Linda Kay Wolfson Bryant, filed a petition for the termination of the parental rights of defendant, James Ashley Bryant ("Father," "Respondent"), and for the adoption of his two minor children, Megan Rae Bryant and Devon Michael Bryant. Petitioners appealed the trial court's order denying their petition to terminate defendant's parental rights. This Court reversed the order of the trial court stating:

> From a review of the record, we find that the evidence preponderates against the findings of the trial court. The actions by Respondent constitute "abandonment" as defined by the foregoing

statutory provisions in that he willfully failed to support or make reasonable payments toward the support of the children for a period of more than four consecutive months immediately preceding the filing of the Petition for Termination and Adoption.

The case was remanded to the trial court for a determination of the best interests of the children. On remand, after an evidentiary hearing, the trial court's order entered May 20, 1999, granted the petition for termination and adoption, finding that the termination of the parental rights for both parents, James Ashley Bryant and Sandra Lynn Todd Bryant, was in the best interests of the children. James Ashley Bryant has appealed.

Petitioners are the father and stepmother of Respondent, and are the grandparents of the minor children involved in this action. Sandra Lynn Todd Bryant and Respondent, the parents of the two minor children, were married but separated at the time the petition was filed. They are now divorced. On October 1, 1998, James Bryant married his current wife, Joanne Bryant.

Father, Sandra Bryant, and the minor children lived in Colorado Springs until the couple separated in March of 1996. Upon their separation, they requested that Petitioners care for the two children until they could establish separate households. Linda Bryant went to Colorado Springs and brought the children to Nashville. At the time the children moved to Nashville, James Bryant was in the United States Army stationed in Colorado. The children have continuously resided with the Petitioners since their arrival in Nashville in March of 1996. In October of 1996, Petitioners were awarded custody of the minor children pursuant to an agreed order entered in the Juvenile Court of Davidson County.

James Bryant received early discharge from the Army in December 1996 and returned to Nashville to live in Petitioners' home from December 1996 through April 1997, when they asked him to leave. According to Petitioners' testimony, they no longer wanted James Bryant living in their home because he was irresponsible and left pornography out in the open in his room. James Bryant moved in with his mother who also lives in the Nashville area. Subsequently, James Bryant married Joanne, and currently lives with her in Nashville.

Father has appealed the final order terminating his parental rights and granting the adoption. He presents two issues for review. Since this case was tried by the court sitting without a jury, we review the case *de novo* upon the record with a presumption of correctness of the findings of fact by the trial court. Unless the evidence preponderates against the findings, we must affirm, absent error of law. T.R.A.P. 13(d).

The first issue presented for review is whether there is clear and convincing evidence in this record that Mr. Bryant abandoned the minor children.

As noted above, this Court previously ruled that there was abandonment of the children by Respondent. Thus, on its face it would appear that the "law of the case" doctrine would apply. This

doctrine generally prohibits reconsideration of the issues that have already been decided in a prior appeal of the same case. *Memphis Publishing Co. v. Tennessee Petroleum & Underground Storage Tank Bd.*, 975 S.W.2d 303 (Tenn. 1998). In this case, the Supreme Court said:

> The law of the case doctrine is not a constitutional mandate nor a limitation on the power of a court. 5 Am.Jur.2d *Appellate Review* § 605 (1995); *Ladd* [*v. Honday Motor Co. ltd.,* 939 S.W.2d 83 (Tenn. Ct. App. 1996)]*,* 939 S.W.2d at 90. Rather, it is a longstanding discretionary rule of judicial practice which is based on the common sense recognition that issues previously litigated and decided by a court of competition jurisdiction ordinarily need not be revisited. *Ladd*, 939 S.W.2d at 90 (citing other cases). This rule promotes the finality and efficiency of the judicial process, avoid indefinite relitigation of the same issue, fosters consistent results in the same litigation, and assures the obedience of lower court to the decisions of appellate courts. *Ladd*, 939 S.W.2d at 90; 5 Am.Jur.2d *Appellate Review* § 605 (1995); 1B James W. Moore, *Moore's Federal Practice*, ¶ 0.404[1] (2d ed.1995); 18 Charles A. Wright, Arthur R. Miller & Edward H. Cooper, *Federal Practice and Procedure* § 4478, at 790 (1981).
>
> Therefore, when an initial appeal results in a remand to the trial court, the decision of the appellate court establishes the law of the case which generally must be followed upon remand by the trial court, and by an appellate court if a second appeal is taken from the judgment of the trial court entered after remand. Miller, *supra*, ¶ 0.404[1]. There are limited circumstances which may justify reconsideration of an issue which was an issue decided in a prior appeal: (1) the evidence offered at a trial or hearing after remand was substantially different from the evidence in the initial proceeding; (2) the prior ruling was clearly erroneous and would result in a manifest injustice if allowed to stand; or (3) the prior decision is contrary to a change in the controlling law which has occurred between the first and second appeal. (citations omitted).

*Id.* at 306.

Our previous opinion in this case was filed February 1, 1999. We noted in that opinion that the termination of parental rights must be based on a finding of clear and convincing evidence establishing grounds for the termination and that the termination is in the best interest of the child. T.C.A. § 36-1-113 (c)(1)(2) (Supp. 1998). We also noted that pursuant to T.C.A. § 36-1-113 (g)(1), a ground for termination of parental rights is abandonment by the parent as defined in T.C.A. § 36-1-102.

-3-

We stated:

> With regard as to what constitutes abandonment, T.C.A. § 36-1-102 (Supp. 1998), as pertinent to our inquiry, provides:
>
> (1)(A) "Abandonment" means, for purposes of terminating the parental or guardian rights of parent(s) or guardian(s) of a child to that child in order to make that child available for adoption, that:
>
> (i) For a period of four (4) consecutive months immediately preceding the filing of a proceeding or pleading to terminate the parental rights of the parent(s) or guardian(s) of the child who is the subject of the petition for termination of parental rights or adoption, that the parent(s) or guardian(s) either have willfully failed to visit or have willfully failed to support or make reasonable payments toward the support of the child;
>
>      \*          \*          \*
>
> (B) For the purposes of this subdivision (1), "token support" means that the support, under the circumstances of the individual case, is insignificant given the parent's means;
>
>      \*          \*          \*
>
> (D) For purposes of this subdivision (1), "willfully failed to support" or "willfully failed to make reasonable payments toward such child's support" means that, for a period of four (4) consecutive months, no monetary support was paid or that the amount of support paid is token support;
>
>      \*          \*          \*
>
> (G) "Abandonment" and "abandonment of an infant" do not have any other definition except that which is set forth in this section, it being the intent of the general assembly to establish the only grounds for abandonment by statutory definition. Specifically, it shall not be required that a parent be shown to have evinced a settled purpose to forego all parental rights

> and responsibilities in order for a determination of
> abandonment to be made. Decisions of any court to
> the contrary are hereby legislatively overruled;

*          *          *

***Bryant v. Bryant***, No. 01A01-9806-CV-00337, 1999 WL 43282, *4 (Tenn. Ct. App. Feb. 1, 1999)

As noted above, we found that there was an abandonment by Respondent as defined by the statutory provision.

Subsequent to our decision and subsequent to the evidentiary hearing in the trial court on remand, our Supreme Court decided the case of ***In Re: Swanson***, 2 S.W.3d 180 (Tenn. 1999), in which the Supreme Court held that the definitions in the statute of "willfully failed to support," and "willfully failed to make reasonable payments toward such child support" would be unconstitutional because they "in effect create an irrebuttable presumption that the failure to provide monetary support for the four months preceding the petition to terminate parental rights constitutes abandonment irrespective of whether that failure was intentional." ***Swanson*** at 188. The Supreme Court further held that the definition of abandonment under the prior law should be applied before the legislature made any other provision. ***Swanson*** at 189.

Under the law prior to ***Swanson***, T.C.A. § 36-1-102 (1)(A)(i) (Supp. 1994) defined an abandoned child as:

> [a] child whose parents have willfully failed to visit or have willfully
> failed to support or make reasonable payments toward such child's
> support for four (4) consecutive months immediately preceding
> institution of an action or proceeding to declare the child to be an
> abandoned child.

There is no definition of "willfully failed to support . . ." as contained in the current statute. Therefore, under the prior law, as noted in ***Swanson***, the definition of an abandoned child contained an element of intent. ***In Re: Swanson***, 2 S.W.3d 180, fn 14. Because of the change in the law between the time of the first appeal and the second appeal, we must reconsider the issue of abandonment.

While we premised our previous decision on the statutory definition of "willfully failed to support," we also reviewed the record concerning the respondent's activities with regard to support of his children. The previous opinion states:

> The record reflects a father who has failed to provide
> monetary support for his children and who has irresponsibly relied
> upon others to raise and support his children. As previously

-5-

mentioned, Respondent sent his children to live with his father and stepmother in March 1996 while he and his wife were having marital difficulties. At no time while the children resided with Petitioners and he resided in Colorado did Respondent send any monetary support to his children. While the children resided with Petitioners and during the time that his wife had ceased residing in the same household with him, Respondent, as part of his service in the military, continued to receive extra military benefits for the support of his family. Rather than send this money to Petitioners to support his children, Respondent spent the money on himself. Furthermore, Respondent also received Social Security benefits because of his son's congenital birth defects. As with the military benefits, Respondent did not send this money to Petitioners. Rather, Respondent used this money for his own benefit. Respondent's excuse for not sending such money to support his children is that Petitioners did not ask for any money.

As previously noted, in December 1996, Respondent was discharged from the military. Upon being discharged, Respondent moved back to Nashville and moved in with Petitioners and his children. Petitioners allowed this so Respondent could get back on his feet in order to be able to support himself and his children. Respondent soon after became gainfully employed. However, there is not one episode from the time he moved in in December 1996 until the time he was requested to move out in May 1997 (footnote omitted) that Respondent provided any reasonable monetary support for his children, purchased any groceries for the children, purchased any diapers or clothing for his children, or purchased any Christmas or birthday presents for them. In addition, when asked if he would help with Devon's medical bills, Respondent, on one occasion, stated he could not afford to pay, and, on another occasion, he simply picked up the bill and threw it down. However, the evidence reveals that Respondent had the money to purchase a computer, software, and a guitar for himself and to maintain monthly Internet service for himself.

Furthermore, Respondent admits that he failed to provide any monetary support to Petitioners for his children. On May 27, 1998, Respondent testified as follows at the proceedings below:

Q. Since March of 1996, have you paid any monetary support to Robert or Linda Bryant for the support of your minor children?

A. No, I have not.

Q. Have you paid one dime?

A. No, I have not.

However, Respondent contends that he did provide support for his children. As support for this contention, he testified as follows:

Q. Tell the Court some of the ways that you spent money on your children during that period of December '96 to May of '97.

A. I took my kids to Discovery Zone, paid for everything there. I had taken them out to eat on occasion. I remember one time I was at--I was coming back from Georgia, I stopped in Cracker Barrel, I bought Megan a kaleidoscope, I bought Devon a harmonica and brought those home to them.

According to the plain terms of the statute, this Court views Respondent's assertions of support to constitute, at best, mere token support.

In addition to failing to provide monetary support for his children, Respondent failed to provide any other type of support for his children. For example, he left the day-to-day care of his children in the hands of Petitioners, he spent more time on the computer than with his children, he only attended one of Devon's speech therapy sessions and only one of Devon's numerous doctor's appointments and did so only at the insistence of Petitioners, and he briefly made an appearance at the hospital after one of Devon's surgeries.

*Bryant, supra,* at *4-*5.

The requirement of intent does not invalidate our finding of abandonment of the minor children by the Respondent, because the record reflects that Respondent had the means to provide support for his children but willfully failed to do so. The record evidences an intent on Respondent's part to avoid his parental responsibilities. Accordingly, we find, as we did in our previous opinion, that there is clear and convincing evidence that Respondent has abandoned his minor children, thereby establishing grounds for termination of his parental rights.

The second issue presented for review as stated in respondent's brief is:

2. Whether there is clear and convincing evidence in this record that it is in the best interests of the minor children to termiante Mr. Bryant's parental rights.

Parents have a fundamental right to the care, custody and control of their children. *Stanley v. Illinois*, 405 U.S. 645, 92 S. Ct. 1208, 31 L.Ed.2d 551 (1972); *and O'Daniel v. Messier*, 905 S.W.2d 182, 186 (Tenn. Ct. App.1995) . However, this right is not absolute and may be terminated if there is clear and convincing evidence justifying such termination under the applicable statute. *Santosky v. Kramer*, 455 U.S. 745, 102 S. Ct. 1388, 71 L.Ed.2d 599 (1982). Termination of parental rights must also be in the best interests of the children.

Clear and convincing evidence "eliminates any serious or substantial doubt concerning the correctness of the conclusion to be drawn from the evidence." *O'Daniel*, 905 S.W.2d at 186. Parental rights may be terminated only when continuing the parent-child relationship poses a substantial threat of harm to the child. *See Baker, In re,* No. W1998-00606-COA-R3-CV, 1999 WL 1336044 *3 (Tenn. Ct. App. Dec. 28, 1999) (citing *Petrosky v. Keene,* 898 S.W.2d 726, 728 (Tenn.1995)). With regard to whether termination of parental rights is in the best interest of the child T.C.A. § 36-1-113 (i) (Supp. 1999) states:

> (i) In determining whether termination of parental or guardianship rights is in the best interest of the child pursuant to this part, the court shall consider, but is not limited to, the following:
>
> (1) Whether the parent or guardian has made such an adjustment of circumstance, conduct, or conditions as to make it safe and in the child's best interest to be in the home of the parent or guardian;
>
> (2) Whether the parent or guardian has failed to effect a lasting adjustment after reasonable efforts by available social services agencies for such duration of time that lasting adjustment does not reasonably appear possible;
>
> (3) Whether the parent or guardian has maintained regular visitation or other contact with the child;
>
> (4) Whether a meaningful relationship has otherwise been established between the parent or guardian and the child;
>
> (5) The effect a change of caretakers and physical environment is likely to have on the child's emotional, psychological and medical condition;

(6) Whether the parent or guardian, or other person residing with the parent or guardian, has shown brutality, physical, sexual, emotional or psychological abuse, or neglect toward other children in the family or household;

(7) Whether the physical environment of the parent's or guardian's home is healthy and safe, whether there is criminal activity in the home, or whether there is such use of alcohol or controlled substances as may render the parent or guardian consistently unable to care for the child in a safe and stable manner;

(8) Whether the parent's or guardian's mental and/or emotional status would be detrimental to the child or prevent the parent or guardian from effectively providing safe and stable care and supervision for the child; or

(9) Whether the parent or guardian has paid child support consistent with the child support guidelines promulgated by the department pursuant to § 36-5-101.

The trial court formed the basis for its termination of the parental rights of Sandra Bryant and Respondent as follows:

a.) The father, James Ashley Bryant, cannot be considered a custodial parent to the two children, as the Court has been and continues to be concerned about his parenting skills reflected by his character, attitude and demeanor;

b) Respondent admits that he paid no child support in December of 1998, despite the litigation in this matter. He has discussed this case with his young daughter and readily admits that he will violate the retraining order prohibiting such communication if he thinks it necessary. He has violated this Court's Order on at least two occasions, one occasion being with his present wife;

c) The children virtually do not thrive with their father, the Respondent. To allow further interference of this birth father in the way he conducts his life and his irresponsibilities to the children confirm that termination of his parental rights is in the best interest of the children; and

       d)       The mother of these children, Petitioner Sandra Bryant, gives her consent to her rights being terminated, as she does not desire to parent her children.

From a review of the record, we find that the trial court did not err in finding clear and convincing evidence that the termination of the Respondent's parental rights is in the best interest of the children. It is in the best interests of the children that they establish a permanent home with the adoptive parents. The children currently have a home that appears to be substantially better than the home that Respondent provided for them prior to their move from Colorado. Respondent argues that he has rehabilitated himself as a parent, in part, because he has remarried and now lives in a three bedroom home in a crime free neighborhood. However, the mere fact that a parent has moved to a new home does not mandate a finding that he has made adequate adjustments to conduct or conditions. ***See Baker,*** at *4 (citing ***In the Matter of M.W.A., Jr., C.D.A., P.C.A., K.M.A., and A.K.A.,*** 980 S.W.2d 620, 623 (Tenn. Ct. App. 1998) ("Although the parents have improved their living conditions with a clean, well-furnished home, they have not demonstrated that their parenting skills have improved or will likely improve in the near future even with additional support")). Additionally, the testimony of Dr. Clayton, Devon's treating physician, and the testimony of Petitioners indicates that Respondent continues to be neglectful of Devon's substantial and ongoing medical needs. Respondent himself testified that he was unaware of Devon's last surgery. A permanent home with the adoptive parents, who have been consistent in their attention to the medical needs of Devon, and to the daily and emotional needs of both of the children, is in their best interests.

Accordingly, we find that Respondent has abandoned the minor children as defined by the foregoing Tennessee law. We further find that the evidence does not preponderate against the trial court's finding of clear and convincing evidence that the termination of Respondent's parental rights is in the best interest of the children.

Accordingly, the judgment of the trial court is affirmed. The case is remanded to the trial court for such further proceedings as are necessary. Costs of appeal are assessed against the Appellant, James Ashley Bryant, and his surety.

_____
W. FRANK CRAWFORD, PRESIDING JUDGE, W.S.