IN THE COURT OF APPEALS OF TENNESSEE
AT JACKSON
JUNE 20, 2001 Session

**IN THE MATTER OF: KATHERINE C., A Child Under 18 Years of Age
STATE OF TENNESSEE, DEPARTMENT OF CHILDREN'S SERVICES v.
MARIE STANLEY**

**Direct Appeal from the Juvenile Court for Madison County
No. 33-28, 615; The Honorable Christy R. Little, Judge**

---

**No. W2000-01714-COA-R3-CV - Filed August 22, 2001**

---

The trial court terminated the parental rights of Mother upon a finding that the grounds for termination were proven by clear and convincing evidence and that termination was in the minor child's best interests. We affirm the judgment of the trial court.

**Tenn. R. App. P. 3; Appeal as of Right; Judgment of the Juvenile Court Affirmed**

ALAN E. HIGHERS, J., delivered the opinion of the court, in which W. FRANK CRAWFORD, P.J., W.S., and DAVID R. FARMER, J., joined.

David W. Camp, Jackson, for Appellant

Paul G. Summers, Attorney General and Reporter, Douglas Earl Dimond, Assistant Attorney General, Nashville, for Appellee

**OPINION**

**Facts and Procedural History**

The child at issue in this case, Katherine C. (Katherine), was born on December 16, 1989. Katherine is a special needs child. Katherine's psychiatric diagnoses include the following: attention deficit disorder, hyperactivity disorder, obsessive/compulsive disorder, impulse disorder, depression, cyclothymia, and bipolar disorder. Katherine's mother is Marie Stanley (Mother).

On October 15, 1991, Katherine's maternal grandparents (the Utleys), filed a petition alleging that Mother had moved out and left Katherine and one of her sisters with them.[1] Specifically, the

---

[1] We note that Katherine's siblings are not at issue in this case.

Utleys alleged that Mother stated that "[s]he would be back for the kids when she had a stable place for them." Mother admitted that she was abusing alcohol and drugs during this period. The court found that Katherine and her sibling were dependent and neglected, the children were removed from Mother, and custody was awarded to the Utleys on October 15, 1991.

The appellee, the Department of Children's Services (DCS), gained custody of Katherine on October 1, 1996, when DCS filed a petition alleging that Katherine was endangered because Ms. Utley was attempting to remove her from mental health treatment at Lakeside Psychiatric Hospital against medical advice. Katherine had been admitted to Lakeside three separate times in thirty days. She had become increasingly violent after her grandfather, Mr. Utley, died in her presence in September of 1995.

On December 20, 1996, the Juvenile Court of Madison County entered a Consent Order keeping legal custody of Katherine with DCS but granting Ms. Utley physical custody of Katherine. The court ordered that visitation between Katherine and Mother could occur as recommended by whichever social services agency was involved with Katherine at the particular time.

A plan of care was also developed in February of 1997 which set out various responsibilities for Mother. Mother was required to get parental counseling from the Carl Perkins Center and Pathways, and she was to attend Alcoholics Anonymous once per week. Apparently, Mother completed the parenting classes at the Carl Perkins Center, but DCS received no proof that she attended AA, and there was proof that she attended only one counseling session at Pathways. DCS records also reveal that as late as 1999 Mother was still using drugs.

In 1997, at Ms. Utley's request, Katherine was removed from Ms. Utley's home and placed in a therapeutic foster home managed by Residential Services, Inc. (RSI). Ms. Utley made the request to remove Katherine from her home because Katherine was extremely aggressive and uncontrollable.

While at RSI, Katherine and her family progressed to the point where unsupervised weekend visits were allowed between Mother and Katherine in the winter of 1998. Eventually, an extended trial home visit between Mother and Katherine at Ms. Utley's home was planned. The visit was scheduled to last from June 24 until July 9, 1998. Unfortunately, this visit was a complete failure. Mother left Katherine while she stayed out all night with a man from work. There was also another night during the trial home visit that Mother did not come home. When Mother was present, her conduct was very destabilizing for Katherine. During the trial home visit at Ms. Utley's house, Mother decided to move to a motel and take Katherine with her. There were reports that persons other than Mother were caring for Katherine while at the motel, and Ms. Utley was very concerned about the situation. Subsequently, Katherine returned to Ms. Utley's, and DCS requested that Ms. Utley keep Katherine until she could be returned to RSI's care.

Unfortunately, after the failed trial home visit Katherine deteriorated substantially and had to be hospitalized in a psychiatric facility. If Katherine does not have stability in her life, she reverts

back to angry, aggressive, and injurious behaviors.  Due to Katherine's condition and her regression after visits with Mother, RSI and Katherine's counselor recommended that visits with Mother should cease.   Telephone contact between Mother and Katherine was cut off in 1999 because Katherine would become extremely upset during and after the calls.

On November 2, 1999, DCS filed a Petition for Termination of Parental Rights.  The petition alleged that Mother had failed to remedy persistent conditions that prevented Katherine's return; failed to comply with the plan of care; and abandoned Katherine by failure to visit or pay support. After a hearing, the trial court terminated Mother's parental rights to Katherine based on Mother's failure to remedy the persistent conditions in her life that prevented Katherine's return.[2]  The trial court also stated that termination was in Katherine's best interests.

Mother appeals the decision of the juvenile court, and presents the following issue, as quoted from her brief, for our review:
Did the trial court err in terminating the rights of the natural mother when the State failed to establish by clear and convincing evidence sufficient grounds to permit the parental rights to be terminated.

## Standard of Review

Since this case was tried by the trial court sitting without a jury, we review the case *de novo* upon the record with a presumption of correctness of the trial court's findings of fact unless the preponderance of evidence is otherwise.  Conclusions of law are reviewed *de novo* with no presumption of correctness.  TENN. R. APP. P. 13(d).

## Law and Analysis

The United States Supreme Court has recognized the important nature of cases involving the termination of parental rights, stating that "[f]ew consequences of judicial action are so grave as the severance of natural family ties."  M.L.B. v. S.L.J., 519 U.S. 102, 119 (1996) (quoting Santosky v. Kramer, 455 U.S. 745 (1982) (Rehnquist, J., dissenting)).  Accordingly, "the interest of parents in their relationship with their children is sufficiently fundamental to come within the finite class of liberty interests protected by the Fourteenth Amendment."  Id.  The constitutional protections of the parent-child relationship require certain safeguards before the relationship can be severed.  See O'Daniel v. Messier, 905 S.W.2d 182, 186 (Tenn. Ct. App. 1995) (*rev'd on other grounds,* In re: Swanson, 2 S.W.3d 180 (Tenn. 1999)).

As a safeguard, courts are required to apply the heightened "clear and convincing" proof standard.  See Santosky, 455 U.S. at 769; O'Daniel, 905 S.W.2d at 186.  To justify the termination of parental rights, the grounds for termination must be established by clear and convincing evidence. See TENN. CODE ANN. § 36-1-113(c)(1) (Supp. 2000); State Dep't of Human Servs. v. Defriece, 937

---

[2] We note that the trial court also entered a default judgment that terminated Katherine's father's parental rights.  Father did not appeal and is not a party to this case.

-3-

S.W.2d 954, 960 (Tenn. Ct. App. 1996). Evidence which satisfies the clear and convincing standard "eliminates any serious or substantial doubt concerning the correctness of the conclusions to be drawn from the evidence." O'Daniel, 905 S.W.2d at 188. "This heightened standard . . . serves to prevent the unwarranted termination or interference with the biological parents' rights to their children." In re M.W.A., 980 S.W.2d 620, 622 (Tenn. Ct. App. 1998).

Pursuant to section 36-1-113(c)(1)(2) of the Tennessee Code, termination of parental rights must be based on: "(1) A finding by the court by clear and convincing evidence that the grounds for termination or parental or guardianship rights have been established; and (2) That termination of the parent's or guardian's rights is in the best interests of the child." TENN. CODE ANN. § 36-1-113(c)(1)(2) (Supp. 2000). Section 36-1-113(g)(3)(A) of the Tennessee Code states that parental rights may be terminated where it is proven by clear and convincing evidence that:

> The child has been removed from the home of the parent or guardian by order of a court for a period of six months and:
>
> (i) The conditions which led to the child's removal or other conditions which in all reasonable probability would cause the child to be subjected to further abuse or neglect and which, therefore, prevent the child's safe return to the care of the parent(s) or guardian(s), still persist;
> (ii) There is little likelihood that these conditions will be remedied at an early date so that the child can be safely returned to the parent(s) or guardian(s) in the near future; and
> (iii) The continuation of the parent or guardian and child relationship greatly diminishes the child's chances of early integration into a safe, stable and permanent home.

TENN. CODE ANN. § 36-1-113(g)(3)(A) (Supp. 2000).

In the instant case, the record reveals Mother has had nine years to remedy the conditions that prevented Katherine's return. The record also reveals that several social service agencies have assisted Mother with the goal of returning Katherine to her home. Upon review of the record, it is also apparent that for the last nine years Mother has had countless relationships with numerous men, and she has drifted among several jobs and several residences. At the time of trial, Mother did not have a job, and she stated that she had extensive medical problems due to a seizure. RSI personnel testified that they doubted Mother's ability to physically restrain Katherine due to her medical problems.

It is also apparent from the record that Mother has relied on Ms. Utley to care for Mother's children, including Katherine. Mother has also relied on Ms. Utley for housing and money. The record also reveals that despite the assistance from the various social service agencies to reunify Katherine with her Mother, Mother failed in remedying the conditions in her life that prevented her from having a stable environment for Katherine.

As we noted above, every effort has been made by DCS and the many social services agencies involved with this case to assist Mother so that Katherine could one day return home to a stable environment. Parenting classes, counseling sessions, and Alcoholics Anonymous were all made available to Mother. Unfortunately, while the record reveals that Mother completed parenting classes from the Carl Perkins Center, she only attended one counseling session at Pathways, and there is no proof that Mother ever attended Alcoholics Anonymous. Moreover, DCS records reveal that as late as 1999 Mother was still using drugs.

At trial, during the trial court's ruling, the court stated that Mother had her last chance with the extended trial home visit, but due to Mother's conduct, the visit failed. The court further stated that it is unfair to Katherine to keep giving Mother a chance, when it is Katherine who deserves a chance. We agree. As stated above, Mother has had nine years to remedy the conditions in her life that caused her to lose custody of Katherine. Unfortunately, Mother has chosen not to remedy those conditions and provide Katherine with the stable environment that she desperately needs. Upon review of the record, we agree with the trial court's finding, as we find clear and convincing evidence in the record to support the termination of Mother's parental rights.

The court also found that the termination of Mother's parental rights was in Katherine's best interests. Section 36-1-113(i) gives courts the following factors to consider in making the best interests determination:

> (i) In determining whether termination of parental or guardianship rights is in the best interest of the child pursuant to this part, the court shall consider, but is not limited to, the following:
> (1) Whether the parent or guardian has made such an adjustment of circumstance, conduct, or conditions as to make it safe and in the child's best interest to be in the home of the parent or guardian;
> (2) Whether the parent or guardian has failed to effect a lasting adjustment after reasonable efforts by available social services agencies for such duration of time that lasting adjustment does not reasonably appear possible;
> (3) Whether the parent or guardian has maintained regular visitation or other contact with the child;
> (4) Whether a meaningful relationship has otherwise been established between the parent or guardian and the child;
> (5) The effect a change of caretakers and physical environment is likely to have on the child's emotional, psychological and medical condition;
> (6) Whether the parent or guardian, or other person residing with the parent or guardian, has shown brutality, physical, sexual, emotional or psychological abuse, or neglect toward the child, or another child or adult in the family or household;

(7) Whether the physical environment of the parent's or guardian's home is healthy and safe, whether there is criminal activity in the home, or whether there is such use of alcohol or controlled substances as may render the parent or guardian consistently unable to care for the child in a safe and stable manner;

(8) Whether the parent's or guardian's mental and/or emotional status would be detrimental to the child or prevent the parent or guardian from effectively providing safe and stable care and supervision for the child; or

(9) Whether the parent or guardian has paid child support consistent with the child support guidelines promulgated by the department pursuant to § 36-5-101.

TENN. CODE ANN. § 36-1-113(i) (Supp. 2000). In reviewing the aforementioned factors, we agree with the trial court that the termination of Mother's parental rights is in Katherine's best interests. Katherine is a special needs child who must have stability in her life. Mother has consistently failed to provide the stable environment that Katherine requires, despite the efforts of several social services agencies over the past nine years. As a result, we find that the juvenile court did not err when it determined that there was clear and convincing evidence to terminate Mother's parental rights and that it was in Katherine's best interests to terminate Mother's rights.

### Conclusion

For the aforementioned reasons, we affirm the judgment of the trial court. Costs on appeal are taxed to Mother, for which execution may issue if necessary.

_____
ALAN E. HIGHERS, JUDGE