# IN THE COURT OF APPEALS OF TENNESSEE
## AT JACKSON
### December 28, 2001 Session

## STATE OF TENNESSEE DEPARTMENT OF CHILDREN'S SERVICES
### v.
### DONALD GRANT
### IN THE MATTER OF: E.G.

**Appeal from the Juvenile Court for Madison County**
**No. 35-29, 657      Christy R. Little, Judge**

---

**No. W2001-01934-COA-R3-JV - Filed February 25, 2002**

---

This case involves the termination of parental rights. The child was voluntarily placed in the custody of the Department of Children's Services in April 1996 due to the parents' substance abuse. A petition was filed to terminate the parental rights of both parents. The mother's parental rights were terminated by default, but the petition was dismissed as to the father. The trial court then ordered visitation and child support. The father stopped making visits after two months and failed to pay any child support. A second petition to terminate the father's parental rights was filed on the grounds, *inter alia*, of abandonment and that the conditions which led to the child's removal persisted and were unlikely to be remedied. The trial court granted the petition to terminate parental rights and the father appeals. We affirm, finding clear and convincing evidence to support the termination of the father's parental rights.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Juvenile Court Affirmed**

HOLLY KIRBY LILLARD, J., delivered the opinion of the court, in which W. FRANK CRAWFORD, PJ, WS, and ALAN E. HIGHERS, J., joined.

Carl E. Seely, Jackson, Tennessee, for the Appellant, Donald Grant.

Paul G. Summers, Attorney General and Reporter, and Dianne Stamey Dycus, Deputy Attorney General, Nashville, Tennessee, for the Appellee, State of Tennessee Department of Children's Services.

**OPINION**

This case involves the termination of parental rights. In August 1996, Karen Hoyle Grant ("Mother") and Respondent/Appellant Donald Grant ("Father") voluntarily placed their four-month old child, E.G., in the temporary custody of the Petitioner/Appellee Department of Children's Services (DCS). At that time, both parents admitted that they were substance abusers and unable to properly care for their child. Father was incarcerated in March 1997 after violating his parole and was released in March 1999. E.G. remained in DCS custody.

In October 1998, DCS filed a petition to terminate the parental rights of both parents. In April 1999, the trial court entered a default judgment against Mother. On December 7, 1999 the trial court held a hearing on the petition to terminate the Father's parental rights. There is no transcript of the December 1999 hearing. However, at the hearing, Father apparently put on evidence of a support system from his church and his family, and indicated a resolve to better his situation and become a father to E.G. Several months later,[1] on March 22, 2000, an order was entered dismissing the petition to terminate Father's parental rights. The trial court's order set out a visitation schedule for Father and ordered him to make child support payments in the amount of $78.75 per week. Apparently, the March 22, 2000 order was intended to be retroactive, since the visitation and child support payments were to commence the week of December 13, 1999. However, by the time the order was entered, Father had already ceased visitation with E.G. Father's last visit with the child was in February 2000. Father never made any of the court-ordered child support payments.

At the time the March 2000 order was entered, DCS did not revise the permanency plan to add parental reunification as the long-term goal of the plan. Rather, DCS decided to "wait and see how the visits went to see if we should proceed with reunification." In addition, DCS was under the impression that Father intended to petition for custody of E.G. In July 2000, Father was incarcerated for a parole violation after testing positive for cocaine during a drug test.[2]

On June 30, 2000, the attorney for DCS, Barbara MacIntosh, filed a second petition to terminate Father's parental rights. In the second petition, DCS asserted that, despite the court-ordered visitation schedule and child support, Father had wilfully failed to make any visits or support payments during the four month period preceding the filing of the second termination petition and, thus, had abandoned the child. *See* Tenn. Code Ann. § 36-1-102(1)(A)(i). In the alternative, the petition asserted that E.G. had been removed from Father's custody for a period of six months and that the conditions which lead to the child's removal persisted and would likely prevent the child's safe return to Father's care. *See* Tenn. Code Ann. § 36-1-113(g)(3)(A). In August 2000, upon learning that Father had again been incarcerated for a parole violation, DCS amended the second petition to include separate allegations that Father was incarcerated and failed to make visits or pay child support for the four month period preceding his incarceration and that he engaged in conduct

---

[1] The reason for the delay in entry of the order on the December 1999 hearing is not apparent from the record.

[2] Father was scheduled to go before the parole board in August 2001 for this incarceration.

prior to his incarceration which exhibited a wanton disregard for the welfare of his child. *See* Tenn. Code Ann. § 36-1-102(1)(A)(iv).

A hearing on the petition was held in December 2000. The trial court heard the testimonies of Father and the DCS caseworker, Eugena London. The trial court also reviewed the written recommendation of the Guardian Ad Litem, Buff Handley, who recommended that Father's parental rights be terminated and the child be placed for adoption. The DCS caseworker, London, testified that Father's last visit with E.G. was in February 2000. She said that E.G.'s foster mother had been cooperative regarding Father's visits, but that Father would arrange to visit E.G. and fail to show up, resulting in great disappointment for the child. London stated that Father had paid no child support. London acknowledged that DCS had not set up a permanency plan for reunification of E.G. with Father, but explained that this was because, at the conclusion of the December 1999 hearing, DCS was under the impression that Father planned to seek custody of E.G., and DCS decided to wait to see how Father's visits with E.G. went.

Father testified at the hearing that he was incarcerated at that time because he violated his parole by testing positive for cocaine on a drug screen. Father acknowledged that, at the prior hearing, he was employed, working with his church teaching drug treatment classes, and getting his "life back on track so I could provide for my child." Based on this, Father was given visitation and was ordered to pay child support. In his testimony, Father alternated between accepting responsibility for his failure to become a parent to E.G., and shifting blame to the justice system, his family, E.G.'s foster mother, stress and lack of sufficient drug treatment.

At the conclusion of the hearing, the trial court entered an order, finding that Father was at that time incarcerated and unable to care for the child, and that therefore conditions persisted which would cause the child to be subject to further neglect and prevent the child's safe return to the parent. The trial court found that continuation of the parent-child relationship would greatly diminish E.G.'s chances of early integration into a safe, stable, permanent home. The trial court held that Father had willfully abandoned E.G., by failing to visit E.G. for the four-month period preceding the petition to terminate, as well as the four-month period preceding his incarceration, and by failing to make payments toward E.G.'s support. The trial court concluded that termination of Father's parental rights was in E.G.'s best interest, and ordered Father's parental rights terminated.[3] From this order, Father now appeals.

On appeal, Father argues that DCS failed to prove statutory abandonment because the petition to terminate his parental rights was filed less than four months after entry of the order establishing visitation and child support. He asserts that the trial court's decision to terminate his

---

[3] At the hearing, the trial judge commented to Father:

> **The Court:** . . . . Of all the people that come through here, . . . I thought, this guy's really going to do it this time. . . . I have never been so disappointed to hear when you got this petition that you were back and incarcerated again. . . . [Y]ou can only get so many chances, and you got that chance. . . . [Y]ou got the chance to be a dad, and you didn't take it. . . ."

parental rights was not supported by clear and convincing evidence, and that the decision to terminate his parental rights was in error because DCS failed to modify the permanency plan to include the long-term goal of parental reunification and, additionally, to notify him of the consequences of failing to make visits and pay child support.

In order to terminate a parent's fundamental right to the custody of his child, "there must be a showing that the parent is unfit or that substantial harm to the child will result if parental rights are not terminated." *Tennessee Baptist Children's Homes, Inc. v. Swanson (In re Swanson)*, 2 S.W.3d 180, 188 (Tenn. 1999). The State must prove by clear and convincing evidence that the statutory grounds for such termination exists and that termination is in the best interest of the child. Tenn. Code. Ann. § 36-1-113(c) (2001). This heightened evidentiary standard "serves to prevent the unwarranted termination or interference with the biological parents' rights to their children." *In re M.W.A.*, 980 S.W.2d 620, 622 (Tenn. Ct. App. 1998). This Court must affirm the decision to terminate Father's parental rights if there exists clear and convincing evidence supporting one of the statutory bases found by the trial court. *In re C.W.W.*, 37 S.W.3d 467, at 473-474 (Tenn. Ct. App. 2000).

On appeal, Father argues that DCS was required to set up a permanency plan for E.G. with reunification as the goal before it can petition for termination of Father's parental rights. However, DCS did not seek termination of Father's parental rights based on an alleged failure to comply with a permanency plan. Therefore, this argument is without merit. Likewise, Father's argument that he was unaware of the consequences of failing to visit his child and failing to pay any child support is without merit.

Father also argues that the trial court erred in terminating Father's parental rights because the petition to terminate was filed less than four months after the order was entered granting Father visitation rights and ordering him to pay child support. In this case, the petition to terminate was filed on June 30, 2000. The prior order granting Father visitation and ordering child support payments was entered on March 22, 2000, less than four months before the petition to terminate. However, the March 2000 order clearly relates to the December 7, 1999 hearing, ordering visitation and child support to begin on December 13, 1999. The reason for delay in entry of the March 2000 order is not apparent in the record. Regardless, it is of no consequence. The issue is whether Father failed to visit or financially support E.G. in the four-month period prior to the filing of the petition, and in the four-month period prior to Father's incarceration. It is undisputed that Father's last visit with E.G. took place in February 2000, over four months prior to the petition and over four months prior to his incarceration. It is undisputed that Father made none of the court-ordered child support payments. Father's argument on this issue is without merit.

Father next argues that the trial court's decision to terminate his parental rights was not supported by clear and convincing evidence. As noted above, abandonment of E.G. was proven by undisputed evidence. There is no dispute in the record that Father's last visit with E.G. took place in February 2000, over four months prior to the filing of the petition to terminate and over four months prior to Father's incarceration. There is no dispute in the record that Father made none of

the court-ordered child support payments. Therefore, the ground of abandonment was established by clear and convincing, indeed, undisputed, evidence.

Father also argues that the trial court's finding that the termination of his parental rights was in the child's best interest was not supported by clear and convincing evidence. In deciding whether termination is in the child's best interest the court may consider the following:

> (1) Whether the parent or guardian has made such an adjustment of circumstance, conduct, or conditions as to make it safe and in the child's best interest to be in the home of the parent or guardian;

> (2) Whether the parent or guardian has failed to effect a lasting adjustment after reasonable efforts by available social services agencies for such duration of time that lasting adjustment does not reasonably appear possible;

> (3) Whether the parent or guardian has maintained regular visitation or other contact with the child;

> (4) Whether a meaningful relationship has otherwise been established between the parent or guardian and the child;

> (5) The effect a change of caretakers and physical environment is likely to have on the child's emotional, psychological and medical condition;

> (7) ...[W]hether there is such use of alcohol or controlled substances as may render the parent or guardian consistently unable to care for the child in a safe and stable manner;

> (9) Whether the parent or guardian has paid child support consistent with the child support guidelines...;

Tenn. Code Ann. § 36-1-113(i). At the time of the hearing, the child was four years old and had spent only the first four months of his life in Father's custody. Father failed to pay any child support and visited with E.G. only on an infrequent basis during a short period of time. The testimony of the DCS caseworker indicates that E.G. is doing well in the foster home where he has remained since first coming into state custody and that adoption would be in his best interest. The trial court agreed, concluding that, "the continuation of the parent and child relationship greatly diminishes the child's chances of early integration into a safe, stable and permanent home." *See* Tenn Code Ann. § 36-1-113(g)(3)(A)(iii). We find that the trial court's decision that termination was in the child's best interest was supported by clear and convincing evidence.

The decision of the trial court is affirmed. Costs are taxed to the appellant, Donald Grant, and his surety, for which execution may issue if necessary.

_____
HOLLY KIRBY LILLARD, JUDGE