IN THE COURT OF APPEALS OF TENNESSEE
AT NASHVILLE
June 15, 2010 Session

## IN RE: CYNTHIA M-M[1], ET AL.

**Appeal from the Juvenile Court for Rutherford County**
**No. TC1078     Donna Scott Davenport, Judge**

**No. M2010-00080-COA-R3-PT - Filed July 23, 2010**

Father of child appeals the trial court's denial of his motion to continue hearing to terminate his parental rights and subsequent termination of his rights on the grounds of abandonment and failure to establish/exercise paternity. Finding that the court erred not recessing the hearing to allow Father to be present at the termination hearing, we vacate the judgment terminating Father's parental rights and remand for further proceedings.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Juvenile Court Vacated in Part and Remanded**

RICHARD H. DINKINS, J., delivered the opinion of the court, in which ANDY D. BENNETT, J., joined. FRANK G. CLEMENT, JR., J., filed a dissenting opinion.

Carl Richard Moore, Murfreesboro, Tennessee, for the appellee Jonathan N.

Joe Eric Hennessee, Murfreesboro, Tennessee, for the appellants, Todd H. and Deserae H.

## OPINION

### I. Factual and Procedural History

Stephanie M. ("Mother") is the mother of three children who were adjudicated to be dependent and neglected in the Rutherford County Juvenile Court; custody of the children was granted to the Petitioners and the children have resided with Petitioners since October

---

[1]    This Court has a policy of protecting the identify of children in parental termination cases by initializing the last names of the parties.

6, 2006.[2] On October 2, 2008, the Petitioners filed a petition to terminate the parental rights of Mother and the fathers of the three children. With respect to Leland H., the child at issue in this appeal, the petition named Victor H. as the presumed father[3] and sought termination of his parental rights on the ground of abandonment. The petition also named any unknown father as a Respondent and alleged the unknown father's failure to establish/exercise paternity as ground for termination of his parental rights.

In November 2008, Jonathan N. ("Father"), a resident of Washington state, filed a petition to establish parentage of Leland H. in the Rutherford County Juvenile Court; a DNA test established that he was the biological father.[4] On April 15, 2009, the Petitioners filed an amended petition adding Father as a party and seeking to terminate his parental rights on the ground of failure to establish/exercise paternity. By agreed order entered July 1, the hearing on the petition was set for August 21, 2009.

On July 30, 2009, Father was arrested in Washington state. On the morning of trial Father's counsel requested that the matter be continued insofar as Father's rights were concerned, asserting that, as a condition of Father's release from custody, he was unable to leave the state. The trial court, after reviewing the conditions of Father's release, denied the request. In an order entered on November 5, the court terminated Father's parental rights, finding by clear and convincing evidence that Father abandoned Leland H. by failing to visit and support and that he failed to establish parentage prior to the filing of the petition for termination. Father appeals and raises the following issues:

1. Whether the Juvenile Court abused its discretion by denying Father's motion for a continuance.

2. Whether the Juvenile Court erred in ruling that Father abandoned the child by failing to visit or support.

_____

[2] The record of the dependency and neglect proceedings is not part of the record on appeal; the background of the proceedings was gleaned from the parties' briefs on appeal.

[3] Victor H. was presumed to be the father and named as a party since he was believed to have been married to Mother at the time of the child's birth. In the final order, the court found him to be the legal father of the child and terminated his parental rights on the ground of abandonment by failure to visit and failure to support.

[4] The record reflects that the DNA test was ordered in the instant case on February 13, 2009; however, the result was apparently entered as part of the record in the proceeding filed by Father to establish paternity and is not a part of the record before us.

3.  Whether the Court erred in finding grounds for termination under Tenn. Code Ann. § 36-1-113(g)(9)(A) (failure to establish paternity).

4.  Whether the Juvenile Court erred in finding that termination of parental rights is in the child's best interest.

## II.  Analysis

### A.  *Continuance to Allow Father's Presence*

On the morning of the hearing, the court was advised that Father had been arrested in Washington and was not present.  Father's counsel told the court that Father had called the night before the hearing and stated that, under the terms of his release following his arrest, he was not able to leave the State of Washington.  The court and counsel for the parties then discussed proceeding in the absence of Father.  In the course of this dialogue, Father's counsel stated the following:

> I will say, Your Honor, that we have no objection to [Petitioner's Attorney] going forward on all of the other parties.  I just feel that for a termination that my client really should have an opportunity to be here.

After some further discussion, Father's counsel was able to secure, by facsimile transmission from the Thurston County, Washington, Prosecuting Attorney's Office, a copy of the Condition of Release entered in Father's criminal case.  After reviewing the document, the trial court stated:

> THE COURT: ...Travel restrictions, there's a whole box for travel restrictions. It's not checked.  That shows me he could travel.  I think if there was a restriction, it would be checked, and then written out beside what the restriction would be....
> So, the important thing for today is travel restrictions is not checked, nothing is written in.  So, I'm going to find that he had no travel restrictions.
> And, also, even if there were travel restrictions, the box before that, which is not checked, has a way for him to - - do not leave Washington State, which is not checked.  There is a box to check other, which may imply that he could ask for - - to leave the state.  So, from this I don't think he had any other travel restrictions.

Those statements were repeated in substance in the final order with the order also reciting that "[Father] could have been present for the Court hearing today." We do not agree with the trial court's interpretation of the form setting forth the conditions of Father's release; rather, the record is not clear that Father did not have travel restrictions and could have been present for the hearing. Likewise, the record is not clear that Father did not believe that he had travel restrictions and that his failure to appear at the hearing was a waiver of his rights.

The first section of the form details how Father is to be released from custody; the form allows the court to check one of three boxes to indicate that his release was either "on bail/bond," "without Bail/Bond," or another "Pre-Disposition" option, such as work release or electronic monitoring.[5] The second section of the form listed the address where Father was to reside and set forth a number of conditions, as follows:

- ▸      Do not leave Washington state [   ] Other: _____
- ▸      Appear in court on three (3) days notice
- ▸      Do not possess weapons/firearms
- ▸      Maintain weekly contact with your attorney
- ▸      Do not violate the criminal law
- ▸      Do not possess/consume any controlled substances without lawful prescription
        [    ] Do not possess/Consume Alcohol

The third section of the form provided boxes for the court to check adding conditions to Father's release, including travel restrictions, contact restrictions, and supervision. There was also a fourth section of the form entitled "OTHER."

Unlike the first and third sections, the second section did not contain boxes to be checked next to the conditions listed, but rather used arrows. The lack of boxes next to these conditions could indicate that the conditions were mandatory on all individuals released from custody and that the applicability of the condition was not within the discretion of the court.[6] Neither is there an indication that, because the box in the third section titled "Travel Restrictions" was not checked, the condition in the second section prohibiting Father from leaving the state was negated. In short, the form could be equally interpreted to impose a

_____

[5] This section also gave the trial court the option to check a box that would cause the order to expire if charges were not filed by a certain date.

[6] The court expressed the same concern during the hearing when discussing these conditions as follows: "And there's nothing - - there's not a box to check. But there's nothing to check. There's nothing checked. So, I don't know if there are standard conditions or not."

-4-

prohibition of Father's leaving the state. The record does not show what, if any, effort was made to contact the appropriate authorities in Washington to confirm the court's interpretation of the form or to contact Father to determine the basis upon which he believed he could not come to Tennessee for the hearing.

The decision to grant or deny a request for continuance is within the discretion of the trial court and will not be disturbed unless the court abuses that discretion and causes an injustice to the party making the complaint. *Blake v. Plus Mark, Inc.*, 952 S.W.2d 413, 415 (Tenn. 1997); *State Dept. of Children's Serv. v. V.N.*, 279 S.W.3d 306, 317 (Tenn. Ct. App. 2008). The practical effect of the court's ruling was to deny Father, who had instituted a separate proceeding to establish his paternity of Leland H., the opportunity to present proof in defense of his parental rights.

The parental rights of parents are fundamental, *Stanley v. Illinois*, 405 U.S. 645, 651 (1972); *In re Adoption of A.M.H.*, 215 S.W.3d 793, 809 (Tenn. 2007), and the nature of proceedings to terminate parental rights have been recognized as "unique." *See M.L.B. v. S.L.J.*, 519 U.S. 102, 119 (1996) (quoting *Santosky v. Kramer*, 455 U.S. 745, 787 (1982) (Rehnquist, J., dissenting)). Because the decision to terminate parental rights affects fundamental constitutional rights and carries grave consequences, courts must apply a higher standard of proof when adjudicating termination cases. "Th[e] heightened standard . . . serves to prevent the unwarranted termination or interference with the biological parents' rights to their children." *In re M.W.A.*, 980 S.W.2d 620, 622 (Tenn. Ct. App. 1998). This heightened standard applies not only to the substantive bases of the termination of the parents' rights but to all aspects of the proceeding.

In light of the fundamental rights involved in this proceeding and the resulting heightened scrutiny we give on review, as well as the ambiguity of the form upon which the court based its decision to proceed relative to Father, we are of opinion that the court abused its discretion in proceeding with the hearing insofar as it resulted in the termination of Father's rights. In the absence of such proof or an unqualified waiver of Father's right to present same, the trial court was unable to ensure that the termination of Father's rights was warranted on the grounds alleged.

*B. Grounds for Termination*

Father asserts that the trial court relied on an incorrect four-month period to determine whether he abandoned the child; specifically, he complains that the court used the four month period prior to the filing of the original petition rather than the four month period prior to the amended petition, in which he was named. The issue of which four month period is applicable, however, is not appropriate for our consideration.

The original and amended petitions sought termination of the parental rights of any unknown father of Leland and Father, respectively, solely on the ground of failure to exercise/establish paternity. The record does not show any further amendment to the pleadings or consent of the parties to proceed against Father on the ground of abandonment. Because abandonment was not alleged as a ground for termination of Father's rights and the record does not show consent of Father to including abandonment as a ground to be considered by the court, termination of his rights on this ground is improper irrespective of the time period relied upon by the court. *See In re W.B., IV*, 2005 WL 1021618 (Tenn. Ct. App. April 29, 2005).

## III. Conclusion

For the reasons set forth above, the trial court's judgment is VACATED IN PART and REMANDED. Costs of this appeal are assessed against the parties equally, for which execution may issue if necessary.

_____
RICHARD H. DINKINS, JUDGE