IN THE COURT OF APPEALS OF TENNESSEE
AT NASHVILLE
September 6, 2001 Session

## STATE OF TENNESSEE, DEPARTMENT OF CHILDREN'S SERVICES v. JENNIFER LEE NETHERTON WHITED, ET AL.

**Direct Appeal from the Juvenile Court for Dickson County**
**No. 09-98-024-CC      Honorable A. Andrew Jackson, Judge**

---

**No. M2000-03213-COA-R3-JV - Filed November 8, 2001**

---

This appeal involves the termination of parental rights. The juvenile court terminated the parental rights of both parents. Appellant/mother challenges the juvenile court's termination of her rights contending the juvenile court erred by allowing in certain documentary evidence, that the evidence did not clearly and convincingly establish that termination was in the child's best interest, the court failed to state affirmatively that termination was in the best interest of the child, and the petition for termination was defective as it did not explicitly state the statutorily mandated language of Tenn. Code Ann. § 36-1-113(d)(3)(C) (Supp. 2000). As discussed below, we affirm the judgment of the juvenile court.

**Tenn.R.App.P. 3(a) Appeal as of Right; Judgment of the Juvenile Court Affirmed.**

KURTZ, WALTER C., SP. J., delivered the opinion of the court, in which CANTRELL, J. and COTTRELL, J. joined.

Jim Sowell, Dickson, Tennessee, for appellant, Jennifer Lee Netherton Whited.

Paul G. Summers, Attorney General and Reporter, Dianne Stamey Dycus, Assistant Attorney General, Nashville, Tennessee, for appellee, Department of Children's Services.

### OPINION

This is an appeal by the mother, Jennifer Lee Netherton Whited ("Ms. Whited") challenging the ruling of the juvenile court which terminated her parental rights.[1] The child at issue, Michael,

---

[1] The father's rights were also terminated. The father, Michael V. Whited, did not appeal the decision with regard to the termination of his parental rights. Mr. Whited was in jail at the time of the removal and visited the child only twice during the time the Department of Children's Services had custody. He paid no child support and

1

was born on June 29, 1998, weighing six (6) pounds, thirteen (13) ounces. At a hospital visit on August 10, 1998, the child weighed four (4) pounds, thirteen (13) ounces. The State of Tennessee, Department of Children's Services ("the Department") prepared a Protective Services Intake and took Michael into custody citing failure to thrive and the inability of his mother to provide for his special needs. The child had been born with a cleft pallet and required a feeding tube. Ms. Whited reportedly did not realize Michael had a cleft pallet until her visit to the hospital on August 10, 1998. She had difficulty putting in the required feeding tube because she did not like having to restrain the child. Following the taking of Michael, a permanency plan was established and accepted on September 28, 1998, with the ultimate goal of reunification with the mother. This first permanency plan had certain goals listed for Ms. Whited, then Ms. Netherton.

> Ms. Netherton will attend medical appointments and participate in his medical care. Ms. Netherton will learn to provide day to day care for Michael. She will learn to meet his medical needs. Ms. Netherton will participate in ongoing counseling to address parenting skills, neglecting her child and any other identified need per the psychological assessment. Ms. Netherton will develop a relapse prevention program with her therapist. Ms. Netherton will complete parenting classes. Ms. Netherton will participate and follow recommendations given by the homemaker services. Ms. Netherton will complete a psychological assessment and follow all recommendations as a result of this assessment by Department of Children's Services and the therapist.

Ms. Whited was given notice of the permanency plan as well as her obligations under it. She was given notice that the failure to meet these goals could result in the termination of her parental rights. During the following months, Ms. Whited had both supervised and unsupervised visits with Michael. She made only initial progress in regard to the goals established in the permanency plan. She attended some doctor's visits, made some visits with Michael, attended parenting classes, began counseling, and learned some, albeit minimal, sign language. Ms. Whited did not have transportation and stated at the hearing that family members often failed to honor their promises to take her to counseling sessions and doctor's appointments, thereby causing her to miss the appointments. Because of the failure to satisfy the goals outlined in the permanency plan to the Department's satisfaction, another permanency plan was established on September 29, 1999, with the same requirements as the previous plan plus the following additional obligations:

> Ms. Netherton will attend his medical appointments to remain informed of his condition, in order to provide care for him and keep him safe. Ms. Netherton will continue to be under doctor's care and follow his directions and take medication as prescribed. Ms. Netherton needs to secure basic transportation in order to provide for Michael. Ms. Netherton needs to obtain a part-time job to help provide for Michael.

---

never filed an action to legitimize the child. Mr. Whited, however, was represented by counsel during the juvenile court proceedings.

The supervised visits continued through 1999, however, Ms. Whited further regressed in her interest and made no attempts to visit Michael or attend any of his medical appointments from January 8, 2000, through June 21, 2000. At the time the petition to terminate parental rights was filed on July 31, 2000, Ms. Whited had not seen her son regularly for over four (4) months and had not attended his medical appointments. She was unemployed and had no transportation. The juvenile court appointed a guardian ad litem and attorneys for the parents on August 26, 2000, and the matter proceeded to a hearing. At the hearing on October 13, 2000, Ms. Whited, at that time twenty-three (23) years old, admitted that she had failed to satisfy the goals in the permanency plan. She had not learned to care for Michael's special needs and admitted to not having the ability to care for him. She made appointments for counseling only after the petition had been filed. The juvenile court by Order Terminating Parental Rights and Final Decree of Guardianship dated October 13, 2000, stated, "[t]he Court finds by clear and convincing evidence that any and all of the parental rights of Jennifer Lee Netherton Whited and Michael Whited should be terminated in regards to Michael. . . ." The court in the Order stated multiple grounds upon which it based its decision to terminate the parental rights of these parents.

4. This child was found to be dependent and neglected by this Court and was placed in the custody of the Department of Children's Services; the Department made reasonable efforts to prevent removal or the child's situation prevented reasonable efforts from being made prior to removal; the Department has made reasonable efforts to assist the parents to establish a suitable home for the child for a period of four (4) months following the removal, but Respondents have made no reasonable efforts to provide a suitable home and have demonstrated a lack of concern for the child to such a degree that it appears unlikely that they will be able to provide a suitable home for the child at an early date.

5. Against the mother, the Court finds that the circumstances that initially led to the child's removal in August of 1998 still persist today in that the Respondent has never acknowledged or dealt with the child's special needs and her inability to know how to care for the child, as well as her unwillingness to learn how to care for him. The Court further finds that the child has been removed by order of this Court for a period of six (6) months; the conditions which led to his removal still persist; other conditions persist which in all probability would cause the child to be subjected to further abuse and neglect and which, therefore, prevent the child's return to the care of the mother; there is little likelihood that these conditions will be remedied at an early date so that this child can be returned to the mother in the near future; the continuation of the legal parent and child relationship greatly diminishes the child's chances of early integration into a stable and permanent home.

6. Respondent, Jennifer Lee Netherton Whited, has failed to comply with any of the goals of the permanency plan. She was not willing to address any of those reasonable responsibilities related to remedying the conditions which necessitated foster care placement. Therefore, the Court finds that the mother has not complied with the plan of care and there is no reason to believe that she would comply [if] given additional time.

3

7.  Awarding legal and physical custody of the children to Respondents, Jennifer Lee Netherton Whited or Michael Whited would pose a risk of substantial harm to the physical or psychological welfare of the child.

8.  It is in the best interest of the child and the public that all of the parental rights of Respondents to this child be forever terminated, and that the complete custody, control and guardianship of Michael ... be awarded to the State of Tennessee, Department of Children's Services, with the right to place him for adoption and to consent to such adoption in loco parentis.

The appellant appeals the determination to terminate parental rights and states the issues before us are:

1.  Whether the admission of the documentary exhibits, especially the two Permanency Plans, over objection, was in violation of Tennessee Rules of Evidence 803(6) Records of Regularly Conducted Activity.

2.  Whether the evidence was sufficient to establish by clear and convincing evidence that the parent-child relationship should be terminated.

3.  Whether the court erred by not making an affirmative finding, by clear and convincing evidence, that termination of parental rights was in the best interest of the child.

4.  Whether the petition to terminate parental rights was fatally defective for failure to state the requirements of TCA 36-1-113(d)(3)(C).

## I.  Standard of Review

Our review of the trial court's findings is de novo upon the record accompanied by a presumption of correctness of the findings unless the preponderance of the evidence is otherwise. See Tenn. R. App. P. 13(d).   The termination of parental rights requires a higher standard of proof because it affects fundamental constitutional rights.  See In re C.D.B., S.S.B. & S.E.B., 37 S.W.3d 925, 927 (Tenn. Ct. App. 2000) cert. denied Bagwell v. Tennessee Dept. of Children's Services, 121 S.Ct. 2532, 150 L.Ed.2d 703 (2001).  The grounds for the termination of parental rights must be established by clear and convincing evidence.  Tenn. Code Ann. § 36-1-113(c)(1) (Supp. 2000). "This heightened standard ... serves to prevent the unwarranted termination or interference with the biological parents' rights to their children."  In re M.W.A. Jr., C.D.A., P.C.A., K.W.A., & A.KA., 980 S.W.2d 620, 622 (Tenn. Ct. App. 1998).

Parental rights may be terminated in only a limited number of statutorily defined circumstances.  Before termination, one or more of the asserted statutory grounds must be proved by clear and convincing evidence and the court must determine, using the clear and convincing evidence standard, that termination is in the child's best

4

interest.  Tenn. Code Ann. § 36-1-113(c)(2).

In re L.S.W. et al., No. M2000-01935-COA-R3-JV, 2001 WL 1013079, at *5 (Tenn. Ct. App. Sept. 6, 2001) (no Tenn. R. App. P. 11 application filed).

## II.  Admission of Documentary Exhibits

Appellant's first issue on appeal is whether the juvenile court correctly allowed certain documents into evidence, namely, the two (2) permanency plans, trial Exhibits 4 and 6; the two (2) plans of care, trial Exhibit 2; the CPS intake sheet, trial Exhibit 3; the social history, trial Exhibit 5; and the quarterly progress report, trial Exhibit 7.  Appellant argues that the Tennessee Rules of Evidence regarding business records does not allow the admission.  See Tenn. R. Evid. 803(6). Appellant further contends that the Department's witness did not testify to the six (6) prerequisites necessary for admitting evidence of records of regularly conducted activity.[2]  The Department argues that the juvenile court did not err because the appellant failed to object to the admission at the time of trial, these records are kept in the regular course of the Department's business and were part of the Technical Record, and any error would be harmless as there is clear and convincing evidence outside the exhibits which supports the termination of parental rights.

The juvenile court did not err in admitting these documentary exhibits.  First, the record supports the Department's position that appellant failed to object to the admission of the evidence at the hearing.   The failure to object to the admission of evidence constitutes a waiver of the issue. See Tenn. R. App. P. 36(a); Tenn. R. Evid. 103(a)(1); In re Estate of Armstrong, 859 S.W.2d 323, 328 (Tenn. Ct. App. 1993).  Each of the documents were either stipulated to or entered without objection.  The record clearly shows that Exhibit 2 was entered by stipulation and Exhibits 3, 4, 5, 6, and 7 were entered without objection.  Having not objected when the items were first introduced, Ms. Whited waived her objection on appeal that the admission was improper.

Second, in regard to the two (2) permanency plans, the most damaging evidence, these documents were admissible as exceptions to the hearsay rule as appellant adopted the documents as admissions by affixing her signature to them.  "A statement offered against a party that is ... a statement in which the party has manifested an adoption or belief in its truth. . . ." is not excluded by the hearsay rule.  Tenn. R. Evid. 803(1.2).  Ms. Whited signed each of plans as an acknowledgment of the requirements she was obligated to meet to regain custody of her child.

Finally, the permanency plans, when adopted, had been signed by the juvenile judge, placed in the court file, and had become a part of the Technical Record in this case.  The juvenile court

---

[2] The six (6) prerequisites are: (1) the recording must be made at or near the time of the occurrence of the fact recorded; (2) the record must be made from information transmitted by a person with knowledge; (3) the person doing the recording and transmitting must have a business duty to make the recording and transmitting; (4) the record and transmission must be of a regularly conducted business activity; (5) the making of the record must be the regular practice of the business activity; and (6) all of the above elements must be shown by testimony of the custodian of the records or other qualified witness.

judge did not err in admitting any of these documents for the variety of reasons outlined above.

### III.  Clear and Convincing Evidence

Appellant next contends that the evidence before the juvenile court judge did not establish by clear and convincing evidence that her parental rights should be terminated.  As mentioned above, the standard by which to terminate parental rights is clearly stated in the statute.

> (c)  Termination of parental or guardianship rights must be based upon:
> (1)  A finding by the court by clear and convincing evidence that the grounds for termination or parental or guardianship rights have been established; and
> (2)  That termination of the parent's or guardian's rights is in the best interests of the child.

Tenn. Code Ann. § 36-1-113(c) (Supp. 2000).  "Clear and convincing evidence is evidence which eliminates any serious or substantial doubt concerning the correctness of the conclusion to be drawn from the evidence."  In re C.D.B, S.S.B. & S.E.B, 37 S.W.3d at 927.  We uphold the juvenile court's decision that the Department presented clear and convincing evidence that the Ms. Whited's parental rights should be terminated.

The record in this case clearly supports the termination of appellant's parental rights under the applicable statutory authority.  The juvenile court, in rendering its oral decision at the hearing, stated the basis for its decision as follows:

> First of all, I just find it almost unconscionable, having been a father and helped rear our two children, that a child could be brought home from the hospital at 6 pounds, lose 2 pounds, one-third of it's body weight, and the mother not even know it.  I don't understand that.  That, to me, shows total lack of any understanding about infancy or child development or nourishment or growth or any of the other varied terms that could be used in rearing a child.
>
> But the other points are that, here's a lady that wants custody of her child back, but she can't drive.  She doesn't have a job.  She can't put the child in day care.  And what she's planning on doing is the government paying her SSI benefits because of nerves.
>
> There's been substantial noncompliance, even by her own admission, that if she gets the child back, she'd have to do the things that are listed on the 1999 plan of care.  Even she admits that she'd have to do that.
>
> The child's been removed for six months.  Even by her own admissions, the conditions still exist.  She says she's got help.  There's little likelihood that this would be remedied.  I think a continued relationship would greatly diminish the chances of integration for a stable home.  I find that the best interest of the child is to terminate -- the parental rights be terminated.

First, the evidence at the juvenile court hearing revealed that Ms. Whited had done little to meet the requirements listed in the permanency plan. A possible ground for the termination of parental rights is the fact that "[t]here has been substantial noncompliance by the parent or guardian with the statement of responsibilities in a permanency plan or plan of care. . . ." Tenn. Code Ann. § 36-1-113(g)(2) (Supp. 2000). Ms. Whited was well informed that she needed to meet these requirements to regain custody of her son. Ms. Whited readily admitted that she failed to comply with those requirements. She did not attend all the child's doctor's appointments. The visits with Michael had been irregular up to the time of the hearing. She had not learned how to properly care for his special health needs. The transportation problems had not been corrected indicating that she would not be capable of driving him to the doctor or other necessary appointments. Finally, Ms. Whited's employment status was uncertain and she could not provide for the child financially.

Second, Ms. Whited failed to remedy the conditions which led to the removal of the child in 1998. Grounds for termination of parental rights also exist when:

> The child has been removed from the home of the parent or guardian by order of a court for a period of six (6) months and:
> (i) The conditions which led to the child's removal or other conditions which in all reasonable probability would cause the child to be subjected to further abuse or neglect and which, therefore, prevent the child's safe return to the care of the parent(s) or guardian(s), still persist;
> (ii) There is little likelihood that these conditions will be remedied at an early date so that the child can be safely returned to the parent(s) or guardian(s) in the near future; and
> (iii) The continuation of the parent or guardian and child relationship greatly diminishes the child's chances of early integration into a safe, stable and permanent home.

Tenn. Code Ann. § 36-1-113(g)(3)(A) (Supp. 2000). The evidence before the court revealed that Ms. Whited made little effort to correct the conditions that led to the child's removal. In the two (2) years following Michael's removal, Ms. Whited made very little progress in learning to care for this child's very complex health needs. She had not obtained reliable transportation to take him to the doctor or attend the classes she needed to learn about his feeding and other requirements. Due to her employment status, it was unlikely she could afford to soon correct these transportation problems. The child would have been subject to the same harm and neglect he encountered in 1998 as Ms. Whited could not appropriately feed, care, or provide for him. Despite her comments to the contrary, the evidence revealed she showed little effort to correct the conditions leading to Michael's removal. Finally, Michael had been in the Department's custody for a significant period of time while his mother attempted to meet the goals and the continuation of a relationship with her would inhibit his ability to integrate into a new home. Absent termination of Ms. Whited's parental rights, Michael cannot hope for a permanent, stable home. The juvenile court considered all these factors in rendering its decision. This evidence clearly and convincingly showed that the termination of the parental rights was in the best interests of the child.

7

## IV. Affirmative Finding by Clear and Convincing Evidence

The appellant's next contention is that the juvenile court's ruling is fatally defective because it did not state that the termination of parental rights was in the best interest of the child. Tenn. Code Ann. § 36-1-113(c)(2) (Supp. 2000). "Once statutory grounds for termination have been established, the court must determine, based on clear and convincing evidence, that termination of the parental rights is in the best interest of the children." In re L.S.W. et al., 2001 WL 1013079, at *6.

Ms. Whited is incorrect in her assertion. As quoted above, the juvenile court judge explicitly stated in his written decision as well as in his oral decision at the hearing that termination was in the child's best interest. The juvenile court did not err in this regard. Further, we agree that the evidence at the hearing made clear that the child's interest would better be served by terminating Ms. Whited's parental rights.

## V. Requirements of Tenn. Code Ann. § 36-1-113(d)(3)(C) (Supp. 2000)

Appellant's final contention is that the petition to terminate Ms. Whited's parental rights was fatally defective because it failed to state the requirements of Tennessee Code Annotated § 36-1-113(d)(3)(C) (Supp. 2000). The statute states as follows:

(C) The petition to terminate, or the adoption petition which seeks to terminate parental rights, shall state that:
(i) The petition or request for termination in the adoption petition shall have the effect of forever severing all of the rights, responsibilities, and obligations of the parent(s) or guardian(s) to the child who is the subject of the order, and of the child to those parent(s) or guardian(s);
(ii) The child will be placed in the guardianship of other person(s) or public or private agencies who, or which, as the case may be, shall have the right to adopt the child, or to place the child for adoption and to consent to the child's adoption; and
(iii) The parent or guardian shall have no further right to notice of proceedings for the adoption of the child by other persons and that the parent or guardian shall have no right to object to the child's adoption or thereafter, at any time, to have any relationship, legal or otherwise, with the child.

Again, appellant's contention is not supported by the record. While not explicitly citing the statute, the petition, in numbered paragraph 5, sets out the content of the legislation.

5. That upon hearing, the Court enter a decree forever terminating all of the parental rights which Respondents have to Michael ...; providing that Respondents shall have no further right to notice of proceedings for the adoption of the child, shall have no right to object to the child's adoption, and shall have no relationship, legal or otherwise, with the child; and awarding the complete custody, control and guardianship of the child to the State of Tennessee, Department of Children's

Services, with the right to place him for adoption and to consent to such adoption <u>in loco</u> <u>parentis</u>.

The petition was not defective.

## VI. Conclusion

For the aforementioned reasons, the decision of the juvenile court terminating the parental rights of Jennifer Lee Netherton Whited is affirmed. Costs of this appeal are taxed to the appellant, Jennifer Lee Netherton Whited, for which execution may issue if necessary.

_____
WALTER C. KURTZ, SPECIAL JUDGE