IN THE COURT OF APPEALS OF TENNESSEE
AT KNOXVILLE
Assigned on Briefs March 30, 2011

## IN RE: THE ADOPTION OF GABRIELLE N. N.

**Appeal from the Chancery Court for Hamilton County**
**No. 09-A-057      W. Frank Brown, III, Chancellor**

_____

**No. E2010-01539-COA-R3-PT - Filed April 11, 2011**

_____

Jeanenne W. M. ("Petitioner") filed a petition seeking to adopt the minor child, Gabrielle N.N. ("the Child") and to terminate the parental rights of Russell A.N. ("Father") to the Child. After a trial, the Trial Court entered its order on June 14, 2010 finding and holding, *inter alia*, that clear and convincing evidence existed to support a termination of Father's parental rights pursuant to Tenn. Code Ann. §§ 36-1-113(g)(3) and (g)(5), and that clear and convincing evidence existed that it was in the Child's best interest for Father's parental rights to be terminated. Father appeals to this Court. We affirm.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Chancery Court Affirmed;
Case Remanded**

D. MICHAEL SWINEY, J., delivered the opinion of the Court, in which HERSCHEL P. FRANKS, P.J., and JOHN W. MCCLARTY, J., joined.

Robert B. Pyle, Chattanooga, Tennessee, for the appellant, Russell A. N.

Mitchell L. Meeks, Chattanooga, Tennessee, for the appellee, Jeanenne W. M.

### OPINION

### Background

The Child's biological mother died in April of 2003. In November of 2009, Petitioner, the maternal grandmother of the Child, filed a petition seeking to terminate Father's parental rights to the Child and to adopt the Child. The case was tried without a jury in June of 2010.

On June 14, 2010 the Trial Court entered its very detailed Memorandum

Opinion and Order finding and holding, *inter alia*:

Based upon the evidence presented at the hearing on June 4, 2010, and the two Orders in the court file, the court makes the following findings of fact based upon clear and convincing evidence.

1. [the Child] was born on January 29, 2002;
2. [Cayla I. N.], born May 2, 1994, is [the Child's] sister;
3. [Father] is the biological father of Cayla and [the Child];
4. [Tasha E. N.] was the biological mother of Cayla and [the Child]; [Tasha E. N.] died on April 14, 2003;
5. [Father] was convicted, by jury trial, of sexual battery on [Cayla], his daughter, pursuant to Tenn. Code Ann. § 39-13-505, which provides as follows:

> **Sexual battery.** – (a) Sexual battery is unlawful sexual contact with a victim by the defendant or the defendant by a victim accompanied by any of the following circumstances:
> (1) Force or coercion is used to accomplish the act;
> (2) The sexual contact is accomplished without the consent of the victim and the defendant knows or has reason to know at the time of the contact that the victim did not consent;
> (3) The defendant knows or has reason to know that the victim is mentally defective, mentally incapacitated or physically helpless; or
> (4) The sexual contact is accomplished by fraud.
> (b) As used in this section, "coercion" means the threat of kidnapping, extortion, force or violence to be performed immediately or in the future.
> (c) Sexual battery is a Class E felony.

6. [Father's] judgment was entered on September 2, 2009, he was sentenced to two years with the Tennessee Department of Corrections, and he is in prison serving that sentence;
7. Part of the sentence provided that [Father] had to register with the sex offender registry and there was a "permanent restraining order from victim";
8. An Order was entered on August 26, 2008, in case numbers … and … in the Juvenile Court for Sevier County, Tennessee as a result of a hearing held on August 8, 2008, and the following are determined from that Order;

9. Both cases were filed by the Tennessee Department of Human Services;

10. [Petitioner, Cayla, and the Child], attended the hearing along with the guardian ad litem, counsel for [Petitioner], and three employees of the Tennessee Department of Children's Services;

11. [Father] and [Taffy W.], Cayla's paternal aunt, were not present even though [Father] had service;

12. Juvenile Court Judge Jeff D. Rader found that [Father] had (a) contact with his two daughters, in violation of the court's specific orders, and such contact was facilitated by [Taffy W.]; and (b) sent threatening text messages and voice mails to Cayla, the alleged victim in the criminal charge of sexual battery filed against [Father];

13. Judge Rader also made the following findings and order:

* * *

3. That the allegations of inappropriate sexual contact between the father and his daughter were what brought this matter into this court resulting in the children originally being placed into the Department of Children's Services custody;

4. That the children were released jointly into a shared custody arrangement between the paternal aunt and the maternal grandmother only because the children themselves desired at that time to continue to go to school in Sevier County and maintain contact with their friends;

5. That the Department of Children's Services has recently performed background checks and a home study on the maternal grandmother and continue[s] to find her to be a responsible and acceptable placement for the children, and given the new circumstances completely agree[s] that the children should be in the sole custody of [Petitioner];

6. That since the threatening contact from the father, the children no longer feel safe and protected in the paternal aunt's care and do not wish or desire to return to Sevier County and have expressed the sincere desire through the Guardian *ad Litem* to remain in the sole custody of the maternal grandmother who currently resides in Hamilton County.

7. That independent of the father's situation, there are several matters of inappropriate activity that have taken place while the child[ren] have been in the paternal aunt's care,

-3-

specifically it has been reported that the aunt no longer has custody of her own children and that she has brought a paramour on an overnight visit with the children in a motel room.[;]

8. That the maternal grandmother has been and continues to provide for the children's care and well-being and is able and willing to do so on a permanent basis;

9. That it has been clearly established that the children's best interests are to be in the sole legal and physical custody of their maternal grandmother, who shall continue to exercise sole authority to consent to the medical, dental, psychological, and educational needs of the children;

* * *

11. That the father shall continue to be prohibited from any contact whatsoever with the above named minor children, to include using third parties to contact the children on his behalf, whether contact be in person, or via telephone, mail, text message, email or any other medium;

12. That all no contact orders shall remain in full force and effect until such time as modified by further hearing of this court, after appropriate pleadings have been filed to include notice to the Department of Children's Services and [Petitioner] as the sole custodian of the children.

13. That the Guardian *ad Litem* shall continue to monitor this situation for 90 days from the date of this order and file additional pleadings if necessary and at the conclusion of that time[-]frame, may close his case accordingly and be released from further responsibilities, subject to being re-appointed should future appropriate pleadings be filed.

14. The Juvenile Court Order was filed as Exhibit "A" to the Petition for Adoption;

15. [Petitioner] is the maternal grandmother of [the Child];

16. [Petitioner] is a resident of Hamilton County, Tennessee;

17. [The Child] and her older sister, Cayla, have resided continuously with [Petitioner] in Hamilton County, Tennessee since August 8, 2008, when [Petitioner] was granted exclusive custody of both granddaughters;

18. [Petitioner] has a very close relationship with [the Child] and the relationship is more like a mother-daughter relationship than a grandmother-

-4-

granddaughter relationship;

19. [Petitioner] wants to adopt [the Child] and her sister, Cayla;

20. [The Child] will begin the third grade when school begins in August of 2010 and she is an excellent student;

21. [The Child] is involved in most school activities and she especially enjoys plays;

22. There is a swimming pool in the neighborhood and the girls have a dog named Dakota;

23. [Petitioner] had received no monetary support at all from [Father] and he has not sent any gifts, cards, or letters to Cayla or [the Child];

24. [Petitioner] testified that there was no appeal of the Juvenile Court Order filed August 26, 2008;

25. [Petitioner] said that [Father] did not appeal his conviction of the sexual battery of Cayla;

26. The adoption of Cayla and [the Child] by [Petitioner] should relieve some of the prior feelings and actions of Cayla's acting in a mother-type role as to her younger sister and [the Child] looking to her older sister, which should allow both sisters to be "girls" and not have any other roles; and

27. [Father] did not testify that he loved his children nor objected to the termination of his parental rights during the hearing on June 4, 2010.

\* \* \*

(c) [Petitioner] also alleged Tenn. Code Ann. § 36-1-113(g)(3) (Supp. 2009) as a ground for termination of [Father's] parental rights; this statute provides as follows:

> (3) The child has been removed from the home of the parent or guardian by order of a court for a period of six (6) months and:
>
> (A) The conditions that led to the child's removal or other conditions that in all reasonable probability would cause the child to be subjected to further abuse or neglect and that, therefore, prevent the child's safe return to the care of the parent(s) or guardian(s), still persist;
>
> (B) There is little likelihood that these conditions will be remedied at an early date so that the child can be safely returned to the parent(s) or guardian(s) in the near future; and
>
> (C) The continuation of the parent or guardian and child relationship greatly diminishes the child's chances of early

integration into a safe, stable and permanent home;

There is no doubt that [the Child] has been removed from the home of [Father] for over six months. Indeed, she had been removed from [Father's] home prior to the Juvenile Court hearing on August 8, 2008. The General Assembly has found that "[S]exual offenders pose a high risk of engaging in further offenses after release from incarceration or commitment…." No doubt this legislative finding is the basis for Tenn. Code Ann. § 40-39-211(c)(2) (Supp. 2009) quoted above, which prohibits [the Child] from living with [Father] after his release because Cayla, a minor, was the victim of the sexual offense. There is no doubt that the retention of [Father's] parental rights is the only barrier to [the Child's] adoption by [Petitioner]. The court finds that this ground has been proved and is sufficient for the termination of [Father's] parental rights.

(d) [Petitioner] has also alleged that [Father's] parental rights should be terminated pursuant to Tenn. Code Ann. § 36-1-113(g)(5) (Supp. 2009), which provides:

> (5) The parent or guardian has been sentenced to more than two (2) years' imprisonment for conduct against the child who is the subject of the petition, or for conduct against any sibling or half-sibling of the child or any other child residing temporarily or permanently in the home of such parent or guardian, that has been found under any prior order of a court or that is found by the court hearing the petition to be severe child abuse, as defined in § 37-1-102(b). Unless otherwise stated, for purposes of this subdivision (g)(5), "sentenced" shall not be construed to mean that the parent or guardian must have actually served more than two (2) years in confinement, but shall only be construed to mean that the court had imposed a sentence of two (2) or more years upon the parent or guardian;

This ground is the only ground that [Father's] attorney would concede, based upon the certified copy of the judgment and [Father's] testimony.

The court finds that [Father's] conviction on September 2, 2009 fits this specific statute. [Father] was sentenced to two years imprisonment. His conduct was against Cayla, the child who is the subject of this petition[, the Child] is the sibling of Cayla, the victim. This subsection of the statute

-6-

provides an independent basis for the termination of a parent's rights. See *Nash-Putnam v. McCloud*, 921 S.W.2d 170, 176 (Tenn. 1996) and *State v. Galvin*, No. 03A01-9807-CV-00233, 1999 Tenn. App. LEXIS 257 AT *16 (April 16, 1999). [Father's] parental rights should be terminated on the basis of this statute.

(e) The Court finds, by clearing [sic] and convincing evidence, that [Father's] parental rights could be terminated on the basis of either Tenn. Code Ann. § 36-1-113(g)(3) or (g)(5) (Supp. 2009).

## B. Best Interests of the Child.

1. Once the grounds for termination are found by clear and convincing evidence, then the court must determine if the termination of the parent's rights is in the child's best interests. Tennessee Code Annotated § 36-1-113(c) (Supp. 2009);

2. In determining adoption/termination issues, the General Assembly has instructed courts to apply the following construction:

> (d) In all cases, when the best interests of the child and those of the adults are in conflict, such conflict shall always be resolved to favor the rights and the best interests of the child ….

Tennessee Code Annotated § 36-1-101(d);

3. In making this determination of the child's best interests,

> [T]he child's best interests must be viewed from the child's, rather than the parent's, perspective.

*White v. Moody*, 171 S.W.3d 187, 194 (Tenn. Ct. App. 2004[)].

4. The General Assembly has identified nine specific factors that a court should consider in determining whether it is in a child's best interest to terminate a parent's rights. Those factors, by number the same as the subsection in Tenn. Code Ann. § 36-1-113(i), and the court's finding[s] are set forth below:

(1) There is no evidence that [Father] "has made such an adjustment of

circumstances, conduct or conditions as to make it safe and in the child's best interest to be in the home of the parent." Tennessee Code Annotated § 36-1-113(i)(1) (Supp. 2009). [Father] was convicted, after a jury trial, of sexual battery on his own daughter, Cayla, the older sibling of [the Child]. [Father] must register with the sexual offender registry. The Juvenile Court order prohibited contact between [Father] and [the Child]. There will be no future relationship, whether the parental termination occurs or not. Termination will allow the adoption; the failure to terminate [Father's] parental rights will prevent the adoption and leave [the Child] without, in effect, a parent;

(2) The second ground has the same issue and result as does the first listed ground; there is no evidence that [Father] has made any adjustment;

(3) [Father] has not maintained regular visitation or contact with [the Child]; and he could not do so as a result of the Juvenile Court Order;

(4) The court finds that the meaningful relationship between [Father] and [the Child], if such existed, has been destroyed by [Father's] sexual battery of and threats against Cayla;

(5) The change in caretakers, after 22 months in [Petitioner's] extensive [sic] custody, would likely be detrimental to [the Child's] emotional and psychological condition, especially when there is no chance of reestablishing the father-daughter relationship, and there was no evidence that there is any viable alternative to [Petitioner's] adoption of [the Child];

(6) The sixth factor is the bright light in this case as [Father] has been convicted of sexual battery of Cayla, [the Child's] older sibling;

(7) There was criminal activity in [Father's] home, *i.e.,* his sexual battery of Cayla, and that activity is why Cayla and [the Child] were removed from [Father's] home and custody;

(8) As stated above, [Father] will not be able to provide safe and stable care for [the Child] and there must be some mental and/or emotional issue with [Father] that would cause him to commit sexual battery on his own daughter, Cayla; and

(9) There was no evidence that [Father] ever paid any child support. [Petitioner] certainly never received any support from [Father] for [the Child];

Counsel for [Father] argued that it has not been proved to be in [the Child's] best interest to terminate [Father's] parental rights. He argued that [Petitioner] had not proved where she lived, what type dwelling she occupied, the children's sleeping arrangements, etc. The General Assembly did not list those issues as factors to consider in making the best interest determination. The court, therefore, rejects [Father's] arguments and contentions that the termination of his parental rights has not been proved by clear and convincing

evidence.… This case has a history in the Juvenile Court of Sevier County.

It appears that the line of attack is not against the issues related to "best interests" but the adoption itself: can [Petitioner] adequately provide and care [for the Child]? Those type issues are covered in the Petition for Adoption. Here, [Petitioner] has filed a verified Petition for Adoption and covered those points. The Answers to [Father's] issues are also found in the Juvenile Court Order of August 26, 2008. [Petitioner] was not questioned about those issues. Most important, Ms. Stephens, as guardian ad litem, did not raise any issues or concerns and expressed her opinion that the termination should occur in order that the adoption could follow. [The Child] needs a safe, secure, loving home. She needs permanency and security. [Petitioner] can provide these needs. [Father] cannot provide these needs. The court finds by clear and convincing evidence that it is in [the Child's] best interest that [Father's] parental rights be terminated.

Father appeals to this Court.

## Discussion

Although not stated exactly as such, Father raises one issue on appeal: whether the Trial Court erred in finding that clear and convincing evidence existed that the termination of Father's parental rights was in the Child's best interests.[1]

Our Supreme Court reiterated the standard of review for cases involving termination of parental rights stating:

> This Court must review findings of fact made by the trial court *de novo* upon the record "accompanied by a presumption of the correctness of the finding, unless the preponderance of the evidence is otherwise." Tenn. R. App. P. 13(d). To terminate parental rights, a trial court must determine by clear and convincing evidence not only the existence of at least one of the statutory grounds for termination but also that termination is in the child's best interest. *In re Valentine*, 79 S.W.3d 539, 546

---

[1]Father does not appeal the Trial Court's findings that grounds were proven by clear and convincing evidence to terminate his parental rights pursuant to Tenn. Code Ann. §§ 36-1-113(g)(3) and (g)(5), and the evidence in the record on appeal does not preponderate against the Trial Court's findings relative to this issue.

(Tenn. 2002) (citing Tenn. Code Ann. § 36-1-113(c)). Upon reviewing a termination of parental rights, this Court's duty, then, is to determine whether the trial court's findings, made under a clear and convincing standard, are supported by a preponderance of the evidence.

*In re F.R.R., III*, 193 S.W.3d 528, 530 (Tenn. 2006).

In *Department of Children's Services v. D.G.S.L.*, this Court discussed the relevant burden of proof in cases involving termination of parental rights stating:

It is well established that "parents have a fundamental right to the care, custody, and control of their children." *In re Drinnon*, 776 S.W.2d 96, 97 (Tenn. Ct. App. 1988) (citing *Stanley v. Illinois*, 405 U.S. 645, 92 S. Ct. 1208, 31 L. Ed. 2d 551 (1972)). "However, this right is not absolute and parental rights may be terminated if there is clear and convincing evidence justifying such termination under the applicable statute." *Id.* (citing *Santosky v. Kramer*, 455 U.S. 745, 102 S. Ct. 1388, 71 L. Ed. 2d 599 (1982)).

Termination of parental or guardianship rights must be based upon a finding by the court that: (1) the grounds for termination of parental or guardianship rights have been established by clear and convincing evidence; and (2) termination of the parent's or guardian's rights is in the best interests of the child. Tenn. Code Ann. § 36-1-113(c). Before a parent's rights can be terminated, it must be shown that the parent is unfit or substantial harm to the child will result if parental rights are not terminated. *In re Swanson*, 2 S.W.3d 180, 188 (Tenn. 1999); *In re M.W.A., Jr.*, 980 S.W.2d 620, 622 (Tenn. Ct. App. 1998). Similarly, before the court may inquire as to whether termination of parental rights is in the best interests of the child, the court must first determine that the grounds for termination have been established by clear and convincing evidence. Tenn. Code Ann. § 36-1-113(c).

*Dep't of Children's Servs. v. D.G.S.L.*, No. E2001-00742-COA-R3-JV, 2001 Tenn. App. LEXIS 941, at **16-17 (Tenn. Ct. App. Dec. 28, 2001), *no appl. perm. appeal filed.* Clear and convincing evidence supporting any single ground will justify a termination order. *E.g.,*

*In re Valentine*, 79 S.W.3d 539, 546 (Tenn. 2002).

As pertinent to this appeal, Tenn. Code Ann. § 36-1-113(i) provides:

(i) In determining whether termination of parental or guardianship rights is in the best interest of the child pursuant to this part, the court shall consider, but is not limited to, the following:

(1) Whether the parent or guardian has made such an adjustment of circumstance, conduct, or conditions as to make it safe and in the child's best interest to be in the home of the parent or guardian;
(2) Whether the parent or guardian has failed to effect a lasting adjustment after reasonable efforts by available social services agencies for such duration of time that lasting adjustment does not reasonably appear possible;
(3) Whether the parent or guardian has maintained regular visitation or other contact with the child;
(4) Whether a meaningful relationship has otherwise been established between the parent or guardian and the child;
(5) The effect a change of caretakers and physical environment is likely to have on the child's emotional, psychological and medical condition;
(6) Whether the parent or guardian or other person residing with the parent or guardian, has shown brutality, physical, sexual, emotional or psychological abuse, or neglect toward the child, or another child or adult in the family or household;
(7) Whether the physical environment of the parent's or guardian's home is healthy and safe, whether there is criminal activity in the home, or whether there is such use of alcohol or controlled substances as may render the parent or guardian consistently unable to care for the child in a safe and stable manner;
(8) Whether the parent's or guardian's mental and/or emotional status would be detrimental to the child or prevent the parent or guardian from effectively providing safe and stable care and supervision for the child; or
(9) Whether the parent or guardian has paid child support consistent with the child support guidelines promulgated by the department pursuant to § 36-5-101.

Tenn. Code Ann. § 36-1-113(i) (2010).

We begin our analysis by noting that the record on appeal contains no

-11-

transcript, but does contain a Statement of the Evidence. This Court has stated that "a parental rights termination case where a Statement of the Evidence would be sufficient would be extremely rare and the best way to proceed is by providing this Court with a complete transcript of all evidence." *L.D.N. v. R.B.W.*, No. E2005-02057-COA-R3-PT, 2006 Tenn. App. LEXIS 103, at **13-14 (Tenn. Ct. App. Feb. 17, 2006), *no appl. perm. appeal filed*. The case now before us on appeal is one of those very rare cases in which a Statement of the Evidence is sufficient to allow this Court to conduct a thorough review.

In his brief on appeal, Father asserts that the Trial Court erred because "no facts were presented showing what conditions were in the proposed adoptive home or that the petitioner was financially able to provide for the child causing the Court to speculate about best interests." Father further asserts:

In order for the Court to grant the adoption T.C.A. 36-1-120(10) [sic] requires the Court find that the petitioner is financially able to provide for the child. No proof was offered regarding the petitioner's financial ability. No proof was offered to indicate the Petitioner had adequate housing available or in fact any housing at all.

(citations to the record omitted).

Father has missed the point. As the Trial Court noted in its June 14, 2010 order: "It appears that the line of attack is not against the issues related to "best interests" but the adoption itself: can [Petitioner] adequately provide and care [for the Child]?" Father's arguments have to do with whether it is in the best interest of the Child for the adoption to be granted, and nothing whatsoever to do with whether it is in the best interest of the Child for Father's parental rights to be terminated, a wholly separate and independent issue.

The Trial Court carefully considered the factors listed in Tenn. Code Ann. § 36-1-113(i) and made specific findings by clear and convincing evidence with regard to those factors. The evidence in the record on appeal does not preponderate against these findings made under the clear and convincing standard.

Father argues on appeal that:

The Court relied on the Juvenile Court Order of August 26, 2008 to supply proof not offered at the Chancery Court trial. However, the findings of the Juvenile Court relied on by the Chancellor were by *probable cause* and can not by themselves rise to the level of proof required for the Chancery Court findings.

(citations to the record omitted).

Again, Father has missed the key point. Although the evidence in the record on appeal may be sparse in some respects, there is sufficient clear and convincing evidence that Father was convicted by a jury of sexual battery against the Child's older sister. The Child's older sister is Father's biological daughter and, like the Child, is a minor child. This critical fact provides strong evidence in support of the Trial Court's findings by clear and convincing evidence relative to the factors contained in Tenn. Code Ann. § 36-1-113(i). Contrary to Father's assertion, the findings in the Juvenile Court Order of August 26, 2008 were not taken "by themselves." Other clear and convincing evidence was presented to the Trial Court.

The evidence in the record on appeal does not preponderate against the findings made by the Trial Court by clear and convincing evidence that it is in the Child's best interest for Father's parental rights to be terminated. We, therefore, affirm the termination of Father's parental rights to the Child. As Father's parental rights to the Child have been terminated properly, Father has no legal right to contest the adoption of the Child.

## Conclusion

The judgment of the Trial Court is affirmed, and this cause is remanded to the Trial Court for collection of the costs below. The costs on appeal are assessed against the appellant, Russell A. N., and his surety, if any.

_____
D. MICHAEL SWINEY, JUDGE