# IN THE COURT OF APPEALS OF TENNESSEE
## AT KNOXVILLE
### Assigned on Briefs August 4, 2014

## IN RE: HAYDEN L.E.B.

### Appeal from the Juvenile Court for Knox County
### No. 103553      Tim Irwin, Judge

### No. E2013-01880-COA-R3-PT-FILED-AUGUST 29, 2014

Rebecca H. and Christopher H. ("Petitioners") filed a petition seeking to terminate the parental rights of Kayla H. ("Mother") and Aaron B. ("Father") to the minor child Hayden L.E.B. ("the Child").[1]   After a trial the Juvenile Court for Knox County ("the Juvenile Court") terminated Father's parental rights to the Child after finding clear and convincing evidence of grounds for termination pursuant to Tenn. Code Ann. § 36-1-113(g)(1) and Tenn. Code Ann. § 36-1-102(1)(A)(iv) for abandonment by willful failure to pay support and abandonment by wanton disregard and clear and convincing evidence that it was in the Child's best interest for Father's parental rights to be terminated.   Father appeals the termination of his parental rights to this Court.  We find and hold that the evidence does not preponderate against the Trial Court's findings made by clear and convincing evidence, and we affirm.

### Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Juvenile Court Affirmed Case Remanded

D. MICHAEL SWINEY, J., delivered the opinion of the Court, in which JOHN W. MCCLARTY and THOMAS R. FRIERSON, II, JJ., joined.

Gregory E. Bennett, Seymour, Tennessee, for the appellant, Aaron B.

Robin Gunn, Knoxville, Tennessee, for the appellees, Rebecca H. and Christopher H.

---

[1]The petition also sought to terminate Mother's parental rights to the minor child Jayla E.H., the Child's step-sister, and the parental rights of Sammy G. to Jayla E.H.  The Juvenile Court for Knox County terminated Mother's parental rights to both the Child and Jayla E.H. and also terminated the parental rights of Sammy G. to Jayla E.H.  Neither Mother nor Sammy G. appealed the termination of their parental rights to either the Child or Jayla E.H.

## OPINION

### Background

Father testified that he was incarcerated at the time of trial in July 2013 and had been for three years serving time for theft and receiving stolen goods. Father's sentence was four years. Father anticipated being released from prison in April of 2014. The Child was born in July of 2009, and was approximately 14 months old when Father was incarcerated.

Father last saw the Child in August of 2010 during a visitation just prior to his incarceration in September of 2010. The Child was residing with Petitioners at that time. Father testified that he always dealt with Petitioner Rebecca H. Father stated that Petitioner Christoper H. "was never in the picture."

Father testified that the Child had lived with him before going into Petitioners' custody. When asked how the Child came to be living with Petitioners and not with him, Father stated:

> I was just into something bad, you know what I'm saying. He lived with me up to the year, you know what I'm saying. I already knew I was going to the penitentiary, and to leave him in the situation that he was in wouldn't be, you know what I'm saying, it wouldn't be right for him. I didn't want him to go to state's custody, so I let [Rebecca H.] have temporary custody of him until I got out.

Father was asked about the bad things he had testified he was into, and he admitted that he had been addicted to drugs. Father admitted that he was addicted to drugs during the time period prior to his current incarceration when he visited the Child. Father stated: "I was trying to get off of [the drugs]. I was going to a rehab. I never got the chance to go to rehab because I got sent to the penitentiary." Father was asked if he had had plans to go to rehab, and he stated: "No, I was waiting on a bed for Centre Point, like two months away, and I never got the chance, I went to court and they sent me to the penitentiary."

Father was asked about the time during which he was addicted to drugs after the Child's birth and whether he was committing crimes during that time period. Father answered: "Not the whole time. It was like when [the Child] was eight months old, that's when it started." Father stated he was stealing to support "[m]y child and my habit, yes, ma'am."

Father was asked if he ever sent any child support to Petitioners for the Child,

and he stated: "Not at the time because they had had him for a couple of months." The Child went into Petitioners' physical custody in May of 2010, and Petitioners were granted final custody of the Child in August of 2010. Father was incarcerated the 21st or 22nd of September of 2010. Father was asked if he had paid any support for the Child during the specific four months prior to his incarceration, and he stated: "I was not notified I was supposed to. I mean, that wasn't part of the agreement." Father was asked if he was aware that there are expenses that go along with caring for a child, and he stated: "I'm pretty smart, yeah." Father admitted that although he knew that Petitioners were buying food, clothing, and diapers for the Child, he sent no support for the Child.

Father testified that he made the decision to allow Petitioners to have temporary custody of the Child. When asked why he did this, Father stated:

> Because I thought - - he's still in a good place. I mean, I don't regret doing it today, you know what I'm saying, I respect them and everything. But, you know, I mean, he was going to a good place and I didn't want him to end up with somebody else.

Father was asked what was going on at home that caused him to think this, and he stated: "I mean, I hardly even stayed there. I didn't have a place. I mean, I hardly even stayed there with [Mother]. I didn't have a place to live, and it was just - - I already knew I was going to the penitentiary, I already knew it." Father admitted that he was addicted to drugs during the relevant time period prior to his incarceration and that he could not provide an appropriate and safe home for the Child. He also testified that he did not believe that being with Mother was an appropriate placement for the Child. Father testified that Mother still was not an appropriate placement and stated: "You can see she's not here [at the trial]." Father admitted that he committed the crimes he was incarcerated for after the Child was born. He stated: "I know it looks bad on me, I mean."

Father admitted that he had been convicted of burglary of a vehicle in the past. He further admitted that in April of 2010 he was charged with breaking into a car and using a stolen credit card at Hardee's, but Father stated that he was not convicted of these charges. Father also admitted that in April of 2010 he was charged with theft of a purse in addition to the theft charges for which he currently is serving time. Father, however, then stated: "It wasn't no purse, I don't think. I don't think it was a purse I got charged with." Father was asked what he was charged for, and he stated: "You've got the papers. Tell me."

Petitioner Rebecca H. testified that she and her husband obtained physical custody of the Child in April of 2010. At the end of April or beginning of May of 2010 the Child was taken into State custody for two weeks. The Child was returned to Petitioners'

custody after those two weeks. Petitioners were granted full custody of the Child in August of 2010.

Petitioners' house has four bedrooms and two bathrooms. Ms. H. testified that at the time of trial her household consisted of Petitioners, the Child, the Child's step-sister, and Ms. H.'s mother who was staying with them because she was ill.

Ms. H. testified that she was not aware that Father was on his way to prison when Petitioners took custody of the Child. Ms. H. stated that she only was aware that Father was doing drugs. Ms. H. testified that Father never paid Petitioners any child support.

Ms. H. testified that at the time of trial the Child was about to turn four years old. Ms. H. agreed that the Child had been living with her and her husband for as long as the Child can remember. Petitioners have supplied the Child with food, clothing, shoes, and all of the other things the Child has needed. Ms. H. testified that Petitioners have the means to support the Child and his step-sister and want to adopt both children if the parents' rights are terminated. Ms. H. testified that if Father is drug-free after he gets out of jail she would consider allowing Father to have contact with the Child.

Ms. H. testified that the Child is healthy overall, but has had a lot of allergies. The Child has had his tonsils and his adenoids removed and has had tubes placed twice. Petitioners had the Child evaluated to make sure he was on target, and it appears that the Child is on target.

Father was asked why the Child and his step-sister were taken into State custody in May of 2010, and he stated:

> It was because of [the Child's step-sister's] grandmother. . . . [T]hey had some custody issues over [the Child's step-sister] and [Sammy, the step-sister's father] for Sammy seeing [the step-sister]. And that's what got DHS [sic] involved. DHS [sic] ain't going to come in the house and just take one kid, so that's why [the Child] got pulled into that. At the time I had just met this [Rebecca H.] and she seemed like - - she still is a good woman. And [the Child] would go stay with her for the weekend or something. That's how she got pulled into it, it wasn't because of them. I pulled her into it because I knew he would be in a good place if they did try to terminate our rights or whatever.

After trial the Juvenile Court entered its order terminating Father's parental rights to the Child on January 27, 2014 after finding and holding, *inter alia*:

-4-

[T]he Court finds the following by clear and convincing evidence:

1. That temporary custody of [the Child] was awarded to the [sic] Rebecca [H.] and Christopher [H.] in May of 2010 by order of the Juvenile Court of Knox County, and that the Court made it official and awarded legal and physical custody of [the Child] on August 30, 2010. He has been in the care of Rebecca [H.] and Christopher [H.] continuously since that date. Prior to May 2010, [the Child] was in the legal custody of his mother, however he was being primarily cared for by the Respondent [Father]. An order finding the child dependent and neglected was issued by this Court following a hearing on August 30, 2010. The petition to terminate the parental rights of [Father], was filed on September 20, 2012.

2. The Court finds by clear and convincing evidence that [Father] abandoned the minor child within the meaning of T.C.A. § 36-1-102(1)(i) [sic] and T.C.A. § 36-1-113(g)(1) in that the father willfully failed to support or make reasonable payments toward the support of the child for four (4) consecutive months immediately preceding his incarceration. The father testified that he has never provided financial support to [Petitioners] for the care of [the Child].

3. The Court finds that the petitioners have not met the burden of proof to prove that the [Father] abandoned the minor child by willfully failing to visit.

4. The Court finds by clear and convincing evidence that the [Father] has engaged in conduct prior to his incarceration that exhibited a wanton disregard for the minor child's welfare. Therefore, [Father] has abandoned the child pursuant to T.C.A. § 36-1-102(1)(A)(iv) and T.C.A. § 36-1-113(g). The father testified that he was addicted to and using drugs and committing crimes to support his habit during the time he was caring for the child prior to his incarceration.

5. The Court further finds that [the Child] is living in a safe, secure and loving home. He has devoted caretakers who are committed to his care.

6. It is, therefore, in the best interest of [the Child] and the public that all of [Father's] parental rights to this child be terminated and the complete custody, control, and full guardianship of the child be awarded to Rebecca [H.] and Christopher [H.].

Father appeals the termination of his parental rights to the Child.

## Discussion

Although not stated exactly as such, Father raises three issues on appeal: 1) whether the Juvenile Court erred by finding that clear and convincing evidence existed to

terminate Father's parental rights to the Child pursuant to Tenn. Code Ann. § 36-1-113(g)(1) and Tenn. Code Ann. § 36-1-102(1)(A)(iv) for abandonment by willful failure to provide support; 2) whether the Juvenile Court erred by finding that clear and convincing evidence existed to terminate Father's parental rights to the Child pursuant to Tenn. Code Ann. § 36-1-113(g)(1) and Tenn. Code Ann. § 36-1-102(1)(A)(iv) for abandonment by wanton disregard; and, 3) whether the Juvenile Court erred in finding that it was in the Child's best interest for Father's parental rights to be terminated.

Our Supreme Court reiterated the standard of review for cases involving termination of parental rights stating:

> This Court must review findings of fact made by the trial court *de novo* upon the record "accompanied by a presumption of the correctness of the finding, unless the preponderance of the evidence is otherwise." Tenn. R. App. P. 13(d). To terminate parental rights, a trial court must determine by clear and convincing evidence not only the existence of at least one of the statutory grounds for termination but also that termination is in the child's best interest. *In re Valentine*, 79 S.W.3d 539, 546 (Tenn. 2002) (citing Tenn. Code Ann. § 36-1-113(c)). Upon reviewing a termination of parental rights, this Court's duty, then, is to determine whether the trial court's findings, made under a clear and convincing standard, are supported by a preponderance of the evidence.

*In re F.R.R., III*, 193 S.W.3d 528, 530 (Tenn. 2006).

In *Department of Children's Services v. D.G.S.L.*, this Court discussed the relevant burden of proof in cases involving termination of parental rights stating:

> It is well established that "parents have a fundamental right to the care, custody, and control of their children." *In re Drinnon*, 776 S.W.2d 96, 97 (Tenn. Ct. App. 1988) (citing *Stanley v. Illinois*, 405 U.S. 645, 92 S. Ct. 1208, 31 L. Ed. 2d 551 (1972)). "However, this right is not absolute and parental rights may be terminated if there is clear and convincing evidence justifying such termination under the applicable statute." *Id.* (citing *Santosky v. Kramer*, 455 U.S. 745, 102 S. Ct. 1388, 71 L. Ed. 2d 599 (1982)).

> Termination of parental or guardianship rights must be based upon a finding by the court that: (1) the grounds for termination of parental or guardianship rights have been established by clear and convincing evidence; and (2) termination of the parent's or guardian's rights is in the best interests

of the child. Tenn. Code Ann. § 36-1-113(c). Before a parent's rights can be terminated, it must be shown that the parent is unfit or substantial harm to the child will result if parental rights are not terminated. *In re Swanson*, 2 S.W.3d 180, 188 (Tenn. 1999); *In re M.W.A., Jr.*, 980 S.W.2d 620, 622 (Tenn. Ct. App. 1998). Similarly, before the court may inquire as to whether termination of parental rights is in the best interests of the child, the court must first determine that the grounds for termination have been established by clear and convincing evidence. Tenn. Code Ann. § 36-1-113(c).

*Dep't of Children's Servs. v. D.G.S.L.*, No. E2001-00742-COA-R3-JV, 2001 Tenn. App. LEXIS 941, at **16-17 (Tenn. Ct. App. Dec. 28, 2001), *no appl. perm. appeal filed*. Clear and convincing evidence supporting any single ground will justify a termination order. *E.g., In re Valentine*, 79 S.W.3d 539, 546 (Tenn. 2002).

As pertinent to the first two issues raised by Father, Tenn. Code Ann. § 36-1-113(g)(1) provides:

(g) Initiation of termination of parental or guardianship rights may be based upon any of the grounds listed in this subsection (g). The following grounds are cumulative and non-exclusive, so that listing conditions, acts or omissions in one ground does not prevent them from coming within another ground:

(1) Abandonment by the parent or guardian, as defined in § 36-1-102, has occurred;

Tenn. Code Ann. § 36-1-113(g)(1) (Supp. 2013). In pertinent part, Tenn. Code Ann. § 36-1-102 provides:

(1)(A) For purposes of terminating the parental or guardian rights of parent(s) or guardian(s) of a child to that child in order to make that child available for adoption, "abandonment" means that:

* * *

(iv) A parent or guardian is incarcerated at the time of the institution of an action or proceeding to declare a child to be an abandoned child, or the parent or guardian has been incarcerated during all or part of the four (4) months immediately preceding the institution of such action or proceeding, and either has willfully failed to visit or has willfully failed to support or has willfully failed to make reasonable payments toward the support of the child for four (4)

consecutive months immediately preceding such parent's or guardian's incarceration, or that the parent or guardian has engaged in conduct prior to incarceration that exhibits a wanton disregard for the welfare of the child; or

Tenn. Code Ann. § 36-1-102(1)(A)(iv) (2010).

We first consider whether the Juvenile Court erred by finding that clear and convincing evidence existed to terminate Father's parental rights to the Child pursuant to Tenn. Code Ann. § 36-1-113(g)(1) and Tenn. Code Ann. § 36-1-102(1)(A)(iv) for abandonment by willful failure to provide support. The evidence in the record on appeal shows that Father paid no support whatsoever for the Child during the relevant four month period prior to his incarceration. Father admitted that he paid no support and also admitted that he knows that caring for a child involves expenses. The evidence shows that Father was aware that Petitioners were providing food, clothing, and diapers for the Child. The evidence also shows that Father had some income as he testified that he was committing crimes to support his drug habit. The Juvenile Court found that clear and convincing evidence existed that Father had willfully failed to pay support for the Child during the relevant four month period prior to Father's incarceration.

The evidence in the record on appeal does not preponderate against the finding made by the Juvenile Court by clear and convincing evidence that Father willfully failed to provide support for the Child during the relevant four month period. Given this, we find no error in the Juvenile Court's determination that grounds existed to terminate Father's parental rights for abandonment by willful failure to provide support.

We next consider whether the Juvenile Court erred by finding that clear and convincing evidence existed to terminate Father's parental rights to the Child pursuant to Tenn. Code Ann. § 36-1-113(g)(1) and Tenn. Code Ann. § 36-1-102(1)(A)(iv) for abandonment by wanton disregard. The evidence in the record on appeal shows that Father testified that he was using drugs while the Child was in his custody. The evidence further shows that Father testified that he began committing crimes again when the Child was approximately eight months old and was in Father's custody. Father also testified that Mother was not an appropriate custodian for the Child. Yet, despite knowing that Mother was not an appropriate custodian for the Child, Father began to commit crimes again when the Child was only eight months old and in Father's custody. Father testified that he was stealing to support "[m]y child and my habit, yes, ma'am." These actions exhibit a wanton disregard for the welfare of the Child especially given the fact that the Child was so young at the time and that Father knew that Mother was not an appropriate custodian for the Child. The evidence in the record on appeal also shows that Ms. H. was aware at the time the Child came into her custody that Father was using drugs.

The evidence in the record on appeal does not preponderate against the Juvenile Court's finding by clear and convincing evidence that Father engaged in conduct prior to his incarceration that exhibited a wanton disregard for the welfare of the Child. Given this, we find no error in the Juvenile Court's determination that grounds were proven by clear and convincing evidence to terminate Father's parental rights to the Child for abandonment by wanton disregard.

Having affirmed the Juvenile Court's findings that grounds existed to terminate Father's parental rights to the Child, we next consider Father's third issue, whether the Juvenile Court erred in finding that it was in the Child's best interest for Father's parental rights to be terminated. In determining the best interest of the Child, a trial court is to consider the non-exclusive list of factors contained in Tenn. Code Ann. § 36-1-113(i).

The evidence in the record on appeal shows that Father was using drugs and was committing crimes while the Child was in his custody. The evidence also shows that the Child, who was almost four years old at the time of trial, had been in Petitioners' custody for over three years by the time of trial. The evidence shows that Ms. H. agreed that the Child has been living with her and her husband for as long as the Child can remember. The evidence in the record on appeal shows that Petitioners have supplied the Child with food, clothing, shoes, and all of the other things the Child has needed. The evidence in the record on appeal shows that the Child is in a stable environment and that Petitioners have the means to support the Child and wish to adopt both the Child and the Child's step-sister if the parents' rights are terminated.

The Juvenile Court considered the relevant factors including those contained in Tenn. Code Ann. § 36-1-113(i) when making its finding regarding best interest. The evidence in the record on appeal does not preponderate against the Juvenile Court's finding by clear and convincing evidence that it was in the Child's best interest for Father's parental rights to be terminated.

The evidence in the record on appeal does not preponderate against the Juvenile Court's findings that grounds to terminate Father's parental rights to the Child were proven by clear and convincing evidence, and that it was shown by clear and convincing evidence that it was in the Child's best interest for Father's parental rights to be terminated. We, therefore, affirm the termination of Father's parental rights to the Child.

**Conclusion**

The judgment of the Juvenile Court is affirmed, and this cause is remanded to the Juvenile Court for collection of the costs below. The costs on appeal are assessed against the appellant, Aaron B.

_____

D. MICHAEL SWINEY, JUDGE